NUMBER 13-02-353-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







MIGUEL TREVINO A/K/A MIKE TREVINO
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 357th District Court


of Cameron County, Texas.






O P I N I O N



Before Justices Hinojosa, Yañez, and Castillo


Opinion by Justice Castillo
 



 A jury convicted Miguel Trevino of murder and aggravated assault. The jury's
verdict at punishment was life imprisonment for murder, 99 years for aggravated assault,
and a $10,000 fine for each count. The trial court entered judgment reflecting the jury's
verdict. By four issues, Trevino complains of the denial of his motion to sever, the denial
of his motion to quash the indictment, the admission of evidence of gang affiliation, and the
sufficiency of the evidence. We affirm.

I. BACKGROUND

A. The Indictment

 The indictment alleges two substantive counts and an enhancement count. In count
one, the indictment contained two paragraphs, each accusing Trevino of murdering
Michael Meza under two of the three statutory forms of the offense. The State alleged in
count one that on or about June 8, 2001, Trevino, with the intent to cause serious bodily
injury to Meza, committed an act clearly dangerous to human life by shooting Meza with
a firearm that caused his death, under section19.02(b)(2) of the Texas Penal Code. (1) 
Count one also alleged that Trevino intentionally or knowingly caused the death of Meza
by shooting him with a firearm, in violation of section19.02(b)(1) of the Texas Penal Code. (2)

 In count two, the State alleged that Trevino intentionally, knowingly, or recklessly
caused bodily injury to Everardo Serrato by shooting him with a firearm.

B. Relevant Facts

 On June 8, 2001, between 6:00 and 7:30 p.m., Everardo Serrato stopped at a traffic
light. Vehicles were both in front of and behind his Grand Am. At the time, Serrato was
taking his friend, Mike Meza, home. Serrato had known Meza for about three years and
the two were "always together." At the intersection, Serrato noticed a late-model Jeep
Cherokee traveling in the opposite direction. Serrato recognized the driver as appellant
Miguel Trevino, whom he had known for over fifteen years. At one time, Trevino and
Serrato were in the same prison unit. 

 As the Cherokee neared Serrato's vehicle, Serrato thought Trevino was going to talk
to him and was about to roll down his window. Trevino then shot at Serrato with a semi-automatic gun. Serrato immediately reclined his seat all the way back. More than five
shots were fired, although Serrato could not say how many. Serrato sustained bullet
wounds to his arms, his chest, and his bottom lip. Meza sustained four entry wounds on
the back of his left shoulder. Meza died as a result of his injuries. 

 Serrato maneuvered his vehicle out of traffic and drove off, "running for his life." In
his rear-view mirror, he saw Trevino in pursuit, "holding half of his body out" of the moving
Cherokee, aiming, and continuing to shoot. Two other passengers were in the Cherokee
with Trevino. Serrato saw the woman in the front seat hold the steering wheel as Trevino
shot. Trevino appeared to rush the woman to provide him with another clip so that he
could reload his gun. Trevino continued to shoot for about 15 to 20 minutes, still in pursuit. 
Serrato testified that the shooting stopped when Trevino either dropped the gun or ran out
of bullets. As soon as the shooting stopped, Serrato turned on the first street he reached
and pulled into a convenience store parking lot. 

 Before the shooting, Alfredo Gomez was stopped at the same traffic light. He saw
a Jeep pull into the turning lane in front of his van. After the light changed and Gomez
proceeded, he heard gunshots. He saw a Grand Am parked on the inside lane. He saw
the Jeep take off and park in a lot and then the Grand Am took off, making a fast turn at
the intersection. The driver's side window of the Grand Am was shattered. 

 Carol Cruz testified she was stopped at the same intersection and saw the Grand
Am make a complete stop. She saw the Jeep approach the traffic light and stop, with a
man wearing a white tank top and a girl next to him in the front seat; another man was in
the back seat of the vehicle. She saw the driver pull out a gun, "literally sticking out of the
Jeep," and shoot at the Grand Am. The man in the rear seat of the Jeep was encouraging
the driver to shoot. She heard six shots. She saw the Jeep proceed through the
intersection and make two U-turns, ending up behind her. She testified that the Jeep then
passed her traveling between seventy and eighty miles per hour and appeared to try to
catch up to the Grand Am. 

 At the convenience store where Serrato stopped after the shooting, Veronica
Tinsley, a correctional officer, saw a bloodied and distraught man exit the driver side of his
vehicle. He told her he was scared and asked for help because he had been shot. She
accompanied him inside the store and told him to relax. Serrato responded, "They're after
me, they're after me." She returned to Serrato's vehicle and checked the passenger's
pulse for vital signs; she believed he was dead. Returning to Serrato, Tinsley asked him
about the shooter. Serrato "said he knew who shot him but he didn't give" a name. 

 Detective Carlos Vela testified that the Grand Am had its rear left tire blown out. A
photograph of the vehicle admitted in evidence shows four bullet holes through the driver
side window and another bullet hole through the metal part of the driver side door. Vela
found no bullet casings or weapons inside the Grand Am. Patrolman Danny Leal testified
that the driver's side window tint was peeled off toward the inside indicating the bullets
came from the outside into the car. 

 Police officer Emilio Weaver responded to a call regarding shots being fired
involving two vehicles traveling to Harlingen from San Benito. Weaver testified that when
he reached the convenience store where Serrato parked, Serrato told him that Trevino had
shot him because Serrato was a member of a cadre. 

 Serrato testified he had been to prison three times for firearms and cocaine
convictions. While there, he became a member of a cadre for his own protection. 
According to Serrato, Trevino was a member of the same cadre. However, Serrato was
a veteran member and Trevino was a member of the "new wave." Serrato explained that
"the younger generation is getting on there just to make a name for themselves . . . they
don't like the idea of us telling them what to do or how to run it, they decide to wipe us off
the map." "New wavers," he testified, is what they are called, and they "don't like old guys
doing business." If a new waver takes out an old member, "you establish a rank position
by doing something like that, that draws your attention as far as your group." Meza, the
deceased, was a prospect "in training" to become a cadre member. Serrato did not know
the identity of Meza's sponsor, but "knew he was one of me, that's why he hung out with
me." Serrato denied giving Meza advice about the cadre. 

 At trial, the defense called police sergeant A. R. Garcia, who testified that he did not
find evidence that the tire of Serrato's vehicle came off because of the shooting. He found
no casings at the intersection where the shooting allegedly occurred. On cross-examination, he testified that a hole under the rear license plate of the Grand Am appeared
to be a bullet hole. He found nothing to indicate that a bullet traveled from the inside to the
outside of the vehicle. He testified that firing a gun from inside a vehicle is an act that
clearly intends to cause serious bodily injury to a person. 

 The defense re-called Serrato, who could not explain why the passenger-side
window of the Grand Am was rolled down in the pictures admitted in evidence. He testified
he might have rolled it down to get some air. He testified that his usual sitting position
when driving was leaning back. He testified that when the shooting began, he reclined the
seat.

 During both the culpability and punishment phases of the trial, the State called an
expert, Clemente Rodriguez, to testify about gang activity. Rodriguez is a security threat
group officer with the Institutional Division of the Texas Department of Criminal Justice. 
He testified that a security threat group is comprised of offenders the department has
determined to be a threat to the physical safety of other offenders, the staff, and the public
because of their organized criminal activity. One such group is the cadre, the purpose of
which is to control other offenders and their activities in the prison system. He testified that
one way to identify its members is by a tattoo. Rodriguez reviewed Trevino's records,
which indicated he was a known member of the cadre. Rodriguez testified that it was not
unusual to see violence among members of the same cadre and that one of the cadre's
rules is that any member that becomes a liability to the group while in prison ("muleta") is
to be killed or executed. The cadre has two factions. The first faction includes the older
members who have been in the cadre longer than the second faction. The second faction
separated themselves because they disagreed with the first group when they decided to
have a peace agreement with another cadre. The factions of the cadre are at odds with
each other. According to Rodriguez, the second faction wanted to be the controlling faction
of the cadre. Rodriguez testified that any member who wanted out of or went against the
cadre was to be killed. According to Rodriguez, the security threat groups have codes,
rules, regulations, and constitutions by which members must abide. One rule is
membership for life, "Blood in blood out." Rodriguez testified that a sponsor will run an
investigation on an individual to make sure that he will be good for the group; the sponsor
takes the prospect around with him to see what he can do.

II. SEVERANCE

 In his first issue, Trevino complains the trial court erred in denying his motion to
sever the two offenses. He concedes that section 3.02 of the Penal Code authorized the
State to consolidate the two counts for conduct in the same criminal episode. Tex. Pen.
Code Ann. § 3.02 (Vernon 2003). However, he asserts that under section 3.04 of the
Penal Code, he had the right to severance of the offenses. Tex. Pen. Code Ann. § 3.04
(Vernon 2003). The State responds that the murder and aggravated assault charges were
not joined under Penal Code section 3.02 and, thus, section 3.04(a) does not apply. The
State argues that the offenses constituted one indivisible and simultaneous criminal
transaction. Alternatively, the State argues that error, if any, was harmless.

A. The Defendant's Absolute Right to Severance

 A defendant may be prosecuted in a single trial for all offenses arising out of the
same criminal episode. Tex. Pen. Code Ann. § 3.02(a) (Vernon 2003). The statute
authorizes the consolidation and joinder of prosecutions against a defendant for offenses
arising out of the same criminal episode. Craig v. State, 594 S.W.2d 91, 94 (Tex. Crim.
App. 1980). "Criminal episode" means the commission of two or more offenses,
regardless of whether the harm is directed toward or inflicted upon more than one person
or item of property. Tex. Pen. Code Ann. § 3.01 (Vernon 2003). A single "criminal
episode," as defined in Penal Code section 3.01, includes all offenses that form a part of
one criminal "transaction." Cobb v. State, 85 S.W.3d 258, 266 (Tex. Crim. App. 2002). (3) 
The purpose of the joinder rule is to achieve "convenience and efficiency, permitting one
trial on the joined counts, and treating the separate offenses as one for sentencing
purposes." Halliburton v. State, 578 S.W.2d 726, 729 (Tex. Crim. App. 1979). 

 When two offenses have been consolidated or joined for trial under section 3.02,
the defendant "shall have a right to a severance of the offenses." Tex. Pen. Code Ann.
§ 3.04(a) (Vernon 2003). (4) If the request for severance is timely made, the defendant's right
to a severance is absolute and severance is mandatory. See Coleman v. State, 788
S.W.2d 369, 371 (Tex. Crim. App. 1990); Overton v. State, 552 S.W.2d 849, 850 (Tex.
1977); see also Graham v. State, 19 S.W.3d 851, 852 n.2 (Tex. Crim. App. 2000). To be
timely, the defendant's request for separate trials or objection to their consolidation must
occur before the jury is sworn. See Thornton v. State, 957 S.W.2d 153, 156 (Tex.
App.-Fort Worth 1997), aff'd, 986 S.W.2d 615 (Tex. Crim. App. 1999) (per curiam). The
defendant's complaint is sufficient if it apprises the trial judge that he does not desire to
have the offenses joined in a common trial. See Ford v. State, 782 S.W.2d 911, 912 (Tex.
App.-Houston [14th Dist.] 1989, no pet.). A defendant may so inform the court by
objection, request or motion to sever. Guia v. State, 723 S.W.2d 763, 768 (Tex.
App.-Dallas 1986, writ ref'd). It is error to refuse such a motion, even if made orally on the
day of trial. Murphy v. State, 663 S.W.2d 604, 609 (Tex. App.-Houston [1st Dist.] 1983,
no writ).

 Trevino filed a motion to sever under section 3.04(a), requesting that the two alleged
offenses be severed and tried separately. As grounds, Trevino asserted that the murder
and aggravated assault charges involved two different victims and as such were two
different crimes. The trial court stated in open court that he considered the motion. The
written order denying the motion is in the record. Because the right to sever is absolute,
the trial court erred in denying Trevino's motion. 

B. Harm Analysis

 Before we may reverse the convictions, we must first determine whether Trevino
was harmed by the trial court's error. Severance error is subject to a harm analysis. See
Llamas v. State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000); see also Motilla v. State, 78
S.W.3d 352, 358 (Tex. Crim. App. 2002). A criminal conviction should not be overturned
for non-constitutional error if the appellate court, after examining the record as whole, has
fair assurance that the error did not influence the jury, or had but a slight effect. See Tex.
R. App. P. 44.2(b); Johnson v. State, 967 S.W.2d 410, 417 (Tex. 1998); see generally King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.1997). If the error had no influence or only
a slight influence on the verdict, it is harmless. Johnson, 967 S.W.2d at 417. To judge the
likelihood that the jury's decision was adversely affected by non-constitutional error that
does not affect substantial rights, appellate courts must consider everything in the record
including: (1) all the testimony or physical evidence admitted for the jury's consideration;
(2) the nature of the evidence supporting the verdict; (3) the character of the alleged error
and how it might be considered in connection with other evidence in the case; (4) the jury
instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7)
voir dire, if applicable; and (8) overwhelming evidence of guilt. Motilla, 78 S.W.3d at 357-58; Llamas, 12 S.W.3d at 471. Though not dispositive, the evidence of the defendant's
guilt is a relevant factor in conducting a harm analysis under rule 44.2(b). Motilla, 78
S.W.3d at 360. 

 Thus, Trevino is not entitled to reversal unless the error affected a substantial right. 
See id; Tex. R. App. P. 44.2(b). Rule 44.2(b) requires us to examine error in relation to the
entire proceeding and determine whether it had a substantial and injurious effect or
influence in determining the jury's verdict. Rodriguez v. State, 90 S.W.3d 340, 357-58
(Tex. App.-El Paso 2001, pet. ref'd.). If the reviewing court determines that the error did
not have an influence on the jury, or "had but very slight effect," the verdict must stand. 
Id. at 358. Stated another way, the error must have affected the outcome of the lower
court proceedings. Id. If the record fails to show that the error had such an impact, it
cannot be said to affect a substantial right, and we are mandated to disregard the error. 
Id. If we have "grave doubts" about whether an error did not affect the outcome, we must
treat the error as if it did. Id. 

 Various potentialities for harm other than consecutive sentencing exist when a
defendant is denied the right to severance of offenses. Llamas, 12 S.W.3d at 471. The
rule allowing severance rests upon two legitimate concerns: (1) that the jury may convict
a bad man who deserves to be punished-not because he is guilty of the crime charged but
because of his prior or subsequent misdeeds; and (2) that the jury will infer that because
the accused committed other crimes, he probably committed the crime charged. Id. at
471-72. Some kinds of error will never be harmless under the rule 44.2(b) test and other
kinds of error will rarely be harmless. See id.; see also Cain v. State, 947 S.W.2d 262, 264
(Tex. Crim. App. 1997) (en banc). 

 Here, Trevino does not address harmful error. The State asserts that Trevino's
substantial rights were not affected and the error had no injurious effect on the jury verdict.
The State argues that (1) the two crimes occurred simultaneously and instantaneously, and
they shared a common mens rea; (2) the evidence of each of the crimes would have been
admissible in a separate trial of the other offenses as "same transaction contextual
evidence," under Rogers v. State, 853 S.W.2d 29, 32-34 (Tex. Crim. App. 1993) (en banc),
and Foster v. State, 976 S.W.2d 732, 733-34 (Tex. App.-Tyler 1998, pet. ref'd.) (per
curiam); (3) because the jury would have heard the same evidence whether the offenses
were tried in separate trials or in one trial, the joinder in a single trial could not have
affected Trevino's substantial rights; and (4) Trevino benefitted from one charging
instrument in that he did not receive consecutive sentences and was required to be tried
only once. 

 We have reviewed the record as we must, and it contains sufficient data for our
harm analysis. See Llamas, 12 S.W.3d at 471. During voir dire, the State mentioned the
two offenses in connection with its burden to prove both offenses. Defense counsel
addressed the two offenses in connection with the range of punishment for each. During
opening statements, the State related its theory that Trevino intended to kill a member of
the same cadre and, as a result, injured his targeted victim but killed a passenger in the
vehicle involved. During the culpability phase of the trial, the State called eyewitnesses
who testified that Trevino fired shots into a vehicle stopped at a traffic light, pursued the
vehicle, and continued shooting while in pursuit. The State introduced photographs of the
victims of the shooting and their injuries. The State's witnesses relayed how one victim
survived and the other died as the result of the bullet wounds. The State introduced
photographs showing bullet holes through the driver's side window. During the penalty
phase of the trial, the trial court read the charge to the jury containing the range of
punishment for each offense. 

 In his argument to the jury, defense counsel told the jury that Meza was killed
accidentally. Arguing mitigating circumstances, defense counsel stated that, although
Meza was a family man, he was involved with drugs and the cadre, and that Serrato was
similarly involved in the cadre. The prosecutor argued that Trevino committed "cold-blooded acts of violence. You [the jury] found him guilty of aggravated assault on Everardo
Serrato; you found him guilty of murdering Michael Meza, and now you've heard evidence
that he was apprehended because he was beating a woman unconscious with this bottle." 
The prosecutor mentioned both offenses twice more in asking the jury to assess
punishment at life for the murder offense. 

 Same transaction contextual evidence, namely evidence of other offenses
connected with the primary offense, is admissible not because it has evidentiary value but
because when narrating the events of the charged offense, it is impractical to avoid
describing these other offenses. See Tex. R. Evid. 404(b); Rogers, 853 S.W.2d at 33,
(citing Mayes v. State, 816 S.W.2d 79, 84-87 (Tex. Crim. App. 1991)) ("'Same transaction
contextual evidence' is deemed admissible where several crimes are intertwined or
blended with one another."). We agree with the State that the jury would have heard the
same evidence whether the offenses were tried separately in different trials or together in
one. The joinder of the offenses in a single trial could not have affected Trevino's
substantial rights. 

C. Disposition

 Our examination of the Llamas and Motilla factors as applied to the record before
us leads us to conclude that the error did not affect the outcome of the lower court
proceedings, and Trevino's substantial rights were not affected. Thus, we conclude that
Trevino was not harmed by the trial court's denial of his motion to sever. See Tex. R. App.
P. 44.2(b); Motilla, 78 S.W.3d at 355; Llamas, 12 S.W.3d at 471-72; Johnson, 967 S.W.2d
410 at 417; King, 953 S.W.2d at 271. We overrule Trevino's first issue.

III. MOTION TO QUASH THE INDICTMENT

 In his second issue, Trevino asserts the trial court erred in denying his motion to
quash count one of the indictment (5) alleging murder. Trevino argues that the State failed
to track the language of section 19.02(b)(2) (6) by not including the word "and."

Including the word "and" would require the State to show that Trevino had intent to cause
serious bodily injury and committed an act clearly dangerous to human life that caused a
death as required by section 19.02(b)(2). He states that, without the complained-of
conjunctive in the indictment, the State did not allege all the elements of the offense. The
State responds that the indictment fully and accurately conveys the meaning of the statute,
and, more importantly, that the jury charge contained the word "and." 

 Trevino complains that the jury could have been misled to convict him on a lesser
standard of intent than required by statute. The State argues that the record does not
demonstrate any confusion on the jury's part. Trevino also complains he did not have
proper notice of how the State would attempt to proceed on the allegations and thus was
forced to defend a case in which a lesser standard than the required "intentionally and
knowingly" intent element was applied. Further, he asserts, the failure to give proper notice
was prejudicial. The State responds that, as the prosecutor stated at the hearing below,
the complaint is "a stylistic thing, a comma can also stand for a conjunction." 

A. Standard of Review


 The sufficiency of an indictment is a question of law. State v. Moff, 154 S.W.3d 599,
601 (Tex. Crim. App. 2004). We review a trial court's ruling on a motion to quash de novo.
Id. Prior to the Court of Criminal Appeals' decision in Guzman v. State, 955 S.W.2d 85
(Tex. Crim. App. 1997) (en banc), abuse of discretion was the standard employed when
reviewing a trial court's decision to quash an indictment. Id. The amount of deference
appellate courts afford a trial court's rulings depends upon which "judicial actor" is better
positioned to decide the issue. Guzman, 955 S.W.2d at 89. When the resolution of a
question of law does not turn on an evaluation of the credibility and demeanor of a witness,
then the trial court is not in a better position to make the determination, so appellate courts
should conduct a de novo review of the issue. Moff, 154 S.W.3d at 601. The trial court's
decision in this case was based only on the indictment, the motion to quash, and the
argument of counsel. Thus, the trial court was in no better position than this Court to
decide this issue, so we will conduct a de novo review of the trial court's ruling. Id. 

B. Sufficiency of an Indictment

 As a general rule, a charging instrument that tracks the language of a criminal
statute possesses sufficient specificity to provide a defendant with notice of a charged
offense. State v. Edmond, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996) (en banc). The
State need not allege facts that are merely evidentiary in nature. Bynum v. State, 767
S.W.2d 769, 778 (Tex. Crim. App. 1989) (en banc). An accused is entitled to notice of the
acts or omissions the State alleges the accused committed. Daniels v. State, 754 S.W.2d
214, 217 (Tex. Crim. App. 1988) (en banc). A motion to quash should be granted only
when the language concerning the defendant's conduct is so vague or indefinite as to deny
him effective notice of the acts he allegedly committed. DeVaughn v. State, 749 S.W.2d
62, 67 (Tex. Crim. App.1988) (en banc). To survive a timely motion to quash, the
indictment, on its face, must contain allegations of the facts necessary to show that the
offense was committed, to bar subsequent prosecution for the same offense, and to give
the defendant notice of the precise offense with which he is charged. Id; Tex. Code Crim.
Proc. Ann. art. 21.03 (Vernon 1989). Upon review, we first determine if the notice given
is sufficient. Id. If it is, our inquiry is ended; if not, the record must be examined to
determine the impact of the deficiency on appellant's defense. Id; see also Hillin v. State,
808 S.W.2d 486, 488 (Tex. Crim. App.1991) (en banc). When construing an indictment,
we read the indictment as a whole, applying practical, rather than technical considerations. 
Oliver v. State, 692 S.W.2d 712, 714 (Tex. Crim. App. 1985) (en banc); Dennis v. State,
647 S.W.2d 275, 279 (Tex. Crim. App. 1983) (en banc); Soto v. State, 623 S.W.2d 938,
939 (Tex. Crim. App. 1981); Church v. State, 552 S.W.2d 138, 140 (Tex. Crim. App. 1977). 

 As stated previously, generally, an indictment that tracks the words of a statute is
legally sufficient. Lewis v. State, 659 S.W.2d 429, 431 (Tex. Crim. App.1983) (en banc). 
However, when a statute provides more than one manner of committing a crime, the State
must allege the particular statutory means of committing the offense. See Ferguson v.
State, 622 S.W.2d 846, 851 (Tex. Crim. App. 1981) (en banc) (finding defendant may not
be left to guess whether State would seek to prove one or all types of defined conduct). 
An indictment shall be deemed sufficient if it charges the commission of the offense in
ordinary and concise language in such a manner as to enable a person of common
understanding to know what is meant, and with that degree of certainty that will give the
defendant notice of the particular offense with which he is charged, and enable the court,
on conviction, to pronounce the proper judgment. Tex. Code Crim. Proc. Ann. art. 21.11
(Vernon 1989). An indictment shall not be held insufficient, nor shall the trial, judgment or
other proceedings thereon be affected, by reason of any defect of form which does not
prejudice the substantial rights of the defendant. Tex. Code Crim. Proc. Ann. art. 21.19
(Vernon 1989). 

C. Disposition

 In the motion to quash, Trevino complained that the State changed the elements of
section19.02(b)(2) by: (1) adding "to an individual, namely Michael Meza;" and, (2)
omitting the word "and." The indictment alleged:

 . . . MIGUEL TREVINO A/K/A MIKE TREVINO [defendant], on or
about the 8TH day of JUNE, 2001, and anterior to the presentment of this
indictment, in the County of Cameron and State of Texas, did then and there,
with intent to cause serious bodily injury to an individual, namely, MICHAEL
MEZA, commit an act clearly dangerous to human life, to-wit: by shooting
MICHAEL MEZA with a firearm, that caused the death of said MICHAEL
MEZA,

 AND THE GRAND JURORS AFORESAID, upon their Oaths in said
Court, do further present that the defendant on or about the above
mentioned date and anterior to the presentment of this Indictment, in the
County of Cameron and State of Texas, did then and there intentionally or
knowingly cause the death of an individual, namely, MICHAEL MEZA, by
shooting MICHAEL MEZA with a firearm. 

 At the pretrial hearing, Trevino's counsel argued that the omission of "and" could
lead the jury to conclude the State must prove either the element of "intent to cause
serious bodily injury" or the element of "commits an act clearly dangerous to human life,"
but not both. The trial court held that everything in the clause was required and the
addition of the word "and" was "basically for clarification and is not a substantive change." 
The trial court denied the motion to quash. 

 The notice provided by the indictment in question must be examined from the
perspective of the accused in light of his constitutional presumption of innocence. 
DeVaughn, 749 S.W.2d at 68. Where a particular intent is a material fact in the description
of the offense, it must be stated in the indictment. Tex. Code Crim. Proc. Ann. art. 21.05
(Vernon 1989). Here, Trevino had notice that the State was seeking a murder conviction
in count one under either section19.02(b)(1) or (2). See Tex. Pen. Code Ann. §
19.02(b)(1), (2) (Vernon 2003). The indictment required the State to prove Trevino
"intentionally and knowingly" caused the death of Meza under section 19.02(b)(1). See
Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). The indictment required the State to
prove Trevino had the intent "to cause seriously bodily injury" to Meza. Because the
indictment adequately informed Trevino of the complained-of intent requirement, we
conclude the indictment was sufficient. 

 Trevino complained to the trial court and asserts on appeal that without "and" in the
indictment, the jury could convict him for murder under the standard of a reckless act
codified as manslaughter. The indictment alleges that Trevino "did then and there:" (1)
with intent to cause serious bodily injury; (2) to Meza; (3) commit an act clearly dangerous
to human life; (4) by shooting Meza with a firearm; (5) that caused Meza's death. The
indictment tracks the language of the statute. Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon
2003). The indictment is sufficient. We conclude that the absence of "and" is not fatal. 
We conclude that count one of the indictment gave Trevino sufficient notice that he was
charged with the murder of Meza. Further, the trial court's charge to the jury included the
required culpable mental state:

 Now, if you find from the evidence beyond a reasonable doubt that on or
about the 8th day of June, 2001 in Cameron County, Texas, the defendant,
Miguel Trevino, aka Mike Trevino, did intentionally or knowingly cause the
death of Michael Meza, by shooting him with a firearm or did then and there
intend to cause serious bodily injury to the said Michael Meza and with said
intent to cause such serious bodily injury did commit an act clearly
dangerous to human life, to wit, by shooting the said Michael Meza, with a
firearm, and did, in either event, thereby cause the death of said Michael
Meza, as alleged in the indictment, then you will find the defendant guilty of
murder. 

The court's charge required the jury to find that Trevino intended to cause serious bodily
injury to Meza and with such intent committed an act clearly dangerous to human life under
penal code section 19.02(a)(2). No other culpable mental state was required. See Tex.
Pen. Code Ann. § 19.02(a)(2) (Vernon 2003); Ortiz v. State, 651 S.W.2d 764, 767 (Tex.
Crim. App. 1983) (en banc). 

 We overrule Trevino's second issue.

IV. EVIDENCE OF GANG AFFILIATION

 In his third issue, Trevino asserts the trial court erred in admitting evidence of gang
affiliation during the guilt-innocence phase of the trial, and that he was thereby harmed. 
The State counters that evidence of Trevino's membership in a known gang was
admissible on two bases: (1) to demonstrate motive for the murder and aggravated assault;
and (2) it was the res gestae of the murder itself.

 Trevino complains that the trial court admitted evidence of gang affiliation through
Serrato and the State's expert witness, Clemente Rodriguez. The State's theory was that
Trevino opened fire into Serrato's vehicle because Trevino and Serrato were members of
two competing sects of the same gang. Meza was Serrato's friend and a "victim who
happened to be in the wrong place at the wrong time." Trevino counters that because
Serrato testified that he knew of no reason why Trevino attacked him, evidence of gang
affiliation was improper character evidence. Trevino adds that the expert's testimony was
improper character evidence and, despite the lack of evidence of gang membership as a
motive, the State proceeded to introduce the expert's testimony on prison gangs. 

A. Standard of Review

 We review a trial court's admission or exclusion of evidence under an abuse-of-discretion standard. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990)
(en banc) (op. on reh'g). The abuse-of-discretion standard applies to our review of a trial
court's admission or exclusion of hearsay evidence. See Cunningham v. State,
877 S.W.2d 310, 313 (Tex. Crim. App. 1994) (excluding admission against interest). An
abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without
reference to guiding rules or principles. Montgomery, 810 S.W.2d at 380. In other words,
an abuse of discretion occurs only when the trial court's decision is so wrong as to lie
outside that zone within which reasonable persons might disagree. Id. A trial court has
a "limited right to be wrong." Our inquiry on appeal is whether the result was reached in
an arbitrary or capricious manner. Id. Therefore, we uphold a trial court's evidentiary ruling
if it is reasonably supported by the record and is correct under any theory of law applicable
to the case. Jones v. State, 833 S.W.2d 118, 125 n.15 (Tex. Crim. App. 2002) (en banc);
State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (en banc). We do not
reverse a trial court's evidentiary ruling on a theory of admissibility or inadmissibility not
raised at trial. Martinez v. State, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). 

B. The Law Applicable to Evidentiary Rulings

 To be admissible, evidence must be relevant. Tex. R. Evid. 402. Relevant
evidence is evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it
would be without the evidence. Tex. R. Evid. 401. Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, misleading the jury, by considerations of undue delay, or needless
presentation of cumulative evidence. Tex. R. Evid. 403; Mozon v. State, 991 S.W.2d 841,
846-47 (Tex. Crim. App. 1999). In other words, rule 403 favors the admission of relevant
evidence and carries the presumption that relevant evidence will be more probative than
prejudicial. Phelps v. State, 5 S.W.3d 788, 795 (Tex. App.-San Antonio 1999, pet. ref'd). 
In reviewing the trial court's balancing of probative value with prejudice, we reverse the trial
court's judgment "rarely and only after a clear abuse of discretion." Id. at 795 (citing
Montgomery, 810 S.W.2d at 379). 

 Rule 404 generally prohibits the use of character evidence. Montgomery, 810
S.W.2d at 376-77. Nonetheless, evidence of "other crimes, wrongs, or acts" may be
admissible if it has relevance apart from its tendency "to prove the character of a person
in order to show that he acted in conformity therewith." Tex. R. Evid. 404(b); Montgomery,
810 S.W.2d at 377. To preserve error over admission of extraneous-offense evidence, an
accused first must object under rule 404(b) of the rules of evidence. Tex. R. Evid. 404(b);
Montgomery, 810 S.W.2d at 387; Saldivar v. State, 980 S.W.2d 475, 491 (Tex.
App.-Houston [14th Dist.] 1998, pet. ref'd). The State then must show that the proffered
evidence is relevant apart from its tendency to show that the accused is a criminal, such
as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident." Tex. R. Evid. 404(b); Montgomery, 810 S.W.2d at 387; Saldivar,
980 S.W.2d at 491. At the accused's request, the trial court should then require the State
to articulate the limited purpose for which the evidence is offered. Montgomery, 810
S.W.2d at 387; Saldivar, 980 S.W.2d at 491. In considering the relevancy of the evidence,
the trial court must determine, at the proffer of the evidence, that a jury reasonably could
find beyond a reasonable doubt that the accused committed the extraneous offense. 
Saldivar, 980 S.W.2d at 491. 

 If the trial court determines that the extraneous-conduct evidence is relevant, the
accused then must object under rule 403 and obtain a ruling as to whether the probative
value of the evidence is substantially outweighed by its prejudicial effect. See Tex. R.
Evid. 403; Montgomery, 810 S.W.2d at 388. When the trial court is called on by sufficient
objection to balance the probativeness and prejudice of evidence of extraneous conduct,
the probativeness generally will be the weightier consideration. Montgomery, 810 S.W.2d
at 388. 

 Accordingly, an objection under rule 404(b) alone does not preserve error as to the
admission of evidence of an extraneous offense. Objection under rule 403 also is required. 
Id. Further, when extraneous conduct is admitted in the culpability phase of a trial without
a limiting instruction at the time of admission, it may result in the jury drawing
an impermissible inference about the accused's guilt based on character conformity. See
Hammock v. State, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). The danger then
becomes that a later instruction in the jury charge cannot erase the improper inference. 
Id. Therefore, in the absence of a timely motion for a limiting instruction at the time the
evidence is offered, the evidence is admitted for all purposes. See id. 

C. Evidentiary Objection

 Trevino's rule 404(b) objection to evidence of gang affiliation sufficiently apprised
the trial court of the nature of his complaint. See Montgomery, 810 S.W.2d at 388. 
However, Trevino did not object under rule 403 and obtain a ruling as to whether the
probative value of the evidence was substantially outweighed by its prejudicial effect. See
Tex. R. Evid. 403; Montgomery, 810 S.W.2d at 388. Nor did he ask for a limiting
instruction during the culpability phase of the trial. See Tex. R. Evid. 105(a); see also
Hammock, 46 S.W.3d at 894. We hold that at trial, Trevino did not preserve error on any
complaint over admission of evidence of gang affiliation. 

 Even assuming that Trevino did not forfeit his complaint of error, we conclude that
the trial court did not abuse its discretion in admitting evidence of gang affiliation. As we
have stated, under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible
to prove a person's character and/or to show that the person acted in conformity with that
character. See Tex. R. Evid. 404(b). However, such evidence may be admitted if it is
relevant to motive, identity, intent, opportunity, preparation, plan or absence of mistake. 
Id. As the Texas Court of Criminal Appeals has explained, "It has long been the rule in this
State that the jury is entitled to know all relevant surrounding facts and circumstances of
the charged offense; an offense is not tried in a vacuum." Moreno v. State, 721 S.W.2d
295, 301 (Tex. Crim. App. 1986) (en banc) (citing Archer v. State, 607 S.W.2d 539, 542
(Tex. Crim. App. 1980)). Thus, gang membership evidence is admissible under Texas
Rule of Evidence 404(b) (and rule 402) if it is relevant to show a noncharacter purpose that
in turn tends to show commission of the crime. Ortiz v. State, 93 S.W.3d 79, 94 (Tex.
Crim. App. 2002) (en banc); Tibbs v. State, 125 S.W.3d 84, 89 (Tex. App.-Houston 2003,
pet. ref'd); see also Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002);
Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Beasley v. State, 902
S.W.2d 452, 456-57 (Tex. Crim. App. 1995) (en banc); Chimney v. State, 6 S.W.3d 681,
699 (Tex. App.-Waco 1999, pet. ref'd).

D. Disposition

 The State's theory was that Trevino intentionally opened fire at Serrato's vehicle
because Serrato was a member of a rival sect in the same gang. Thus, the gang affiliation
evidence was relevant evidence of motive to show an intent to kill, and is permissible under
rule 404(b). See Medina v. State, 7 S.W.3d 633, 644 (Tex. Crim. App. 1999) (stating that
evidence of gang affiliation "was most relevant as to appellant's motive and intent on the
night of the offense"); Williams v. State, 974 S.W.2d 324, 331 (Tex. App.-San Antonio
1998, pet. ref'd) (holding evidence of gang affiliation admissible under rule 404(b) to show
motive). Because Trevino's affiliation with the rival "new wavers" was relevant to show the
motive for the shooting, rather than mere conformity with character, the trial court did not
abuse its discretion by allowing the testimony. 

E. Harm Analysis

 Even assuming that the trial court abused its discretion in admitting evidence of
gang affiliation during the guilt-innocence phase of the trial, Trevino is not entitled to
reversal unless he shows that the error was: (1) of constitutional magnitude; or (2) affected
a substantial right. See Tex. R. App. P. 44.2(a), (b). A violation of rules of evidence that
results in erroneous admission of evidence is non-constitutional error. Couchman v. State,
3 S.W.3d 155, 160 (Tex. App.-Fort Worth 1999, pet. ref'd). We begin our harm analysis
under rule 44.2(a), which imposes a more stringent standard than rule 44.2(b). Guidry v.
State, 9 S.W.3d 133, 151 n.14. (Tex. Crim. App. 1999). Under rule 44.2(a), if the appellate
record in a criminal case reveals constitutional error subject to harmless-error review, we
must reverse a judgment of conviction or punishment unless we determine beyond a
reasonable doubt the error did not contribute to the conviction or punishment. Tex. R. App.
P. 44.2(a); Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (en banc);
Aguirre-Mata v. State, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999). In making a
harmless-error determination under rule 44.2(a), we do not focus on the weight of other
evidence of guilt. Rather, we determine whether the error might have prejudiced a juror's
decision-making process. Montgomery v. State, 821 S.W.2d 314, 317 (Tex. App.-Dallas
1991, pet. ref'd) (en banc) (citing Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App.
1989) (en banc)). 

 In performing a harmless-error analysis under rule 44.2(a), we isolate the effect of
the error and determine how much weight a juror would probably place on the error. 
Harris, 790 S.W.2d at 587. If the error was of such a magnitude that in reasonable
probability it disrupted the jury's orderly evaluation of all the evidence, no matter how
overwhelming other evidence of guilt might have been, then the conviction must be
reversed. Id. at 588. Unless the overwhelming evidence dissipates the error's effect on
the jury's function in determining the facts, so that it did not contribute to the verdict, the
error is harmful. Id. at 587. We ask if a reasonable probability exists that the evidence,
either alone or in context, moved the jury from a state of nonpersuasion to one of
persuasion beyond a reasonable doubt. Wesbrook, 29 S.W.3d at 119; Cardenas v. State,
971 S.W.2d 645, 651 (Tex. App.-Dallas 1998, pet. ref'd). If so, the error is harmful. 
Wesbrook, 29 S.W.3d at 119. 

 Whether the evidence is sufficient to convict without the inadmissible evidence is
not the sole determinant in a rule 44.2(a) harm analysis. See Cardenas, 971 S.W.2d at
651. Rather, we assess whether a reasonable probability exists that the erroneously
admitted evidence contributed to the jury's verdict. Id. Thus, we must calculate as closely
as possible the probable impact of the error on the jury in the context of the other evidence
introduced at trial. Harris, 790 S.W.2d at 587. In making this determination, Harris directs
us to examine six factors: (1) the source of the error; (2) the nature of the error; (3)
whether and to what extent the State emphasized the error; (4) any collateral implications
of the error; (5) the weight a juror would probably place on the error; and (6) whether
declaring the error harmless would encourage the State to repeat it with impunity. Id.;
Mosley v. State, 960 S.W.2d 200, 204-05 (Tex. App.-Corpus Christi 1997, no pet.). We
are "obligated to examine the entire record in a neutral, impartial and even-handed manner
and not 'in the light most favorable to the prosecution.'" Harris, 790 S.W.2d at 586.

 We have reviewed the record. The source and nature of the error, if any, was the
trial court's admission of evidence of Trevino's gang affiliation. The State did emphasize
gang affiliation. However, while other evidence of guilt is not a sole determinant, any
collateral implications of admitting the evidence and the amount of weight the jury placed
on the evidence were minimal because the jury heard other, substantial evidence related
to Trevino's conduct. The jury also heard Serrato testify that he was a member of the
same gang and that Trevino was part of the group (the "new wavers") who wanted to rid
the gang of the older members. According to Serrato, Meza was a prospect. We cannot
say that it is likely that the State will repeat this type of error, if any, with impunity. See id. 

 The most significant concern in a rule 44.2(a) harm analysis is the effect of any
erroneously admitted evidence on the integrity of the trial process. Id. While not
determinative of the harm question, the presence of overwhelming evidence supporting a
jury's finding of guilt is a factor in the evaluation of harmless error under rule 44.2(a). Id. 
The unchallenged evidence in this case permitted the jury to find all of the elements of the
charged offenses. This evidence was not contradicted. Given this evidence, the jury was
clearly not equally balanced on the issue of guilt or innocence. Indeed, nothing suggests
the jury would have returned a different verdict "but for" admission of Trevino's gang
affiliation. Tibbs, 125 S.W.3d at 96. We conclude Trevino was not harmed by the
admission of gang affiliation during the guilt-innocence phase of the trial. 

 We overrule Trevino's third issue.

V. SUFFICIENCY OF THE EVIDENCE-MURDER

 We construe Trevino's brief liberally, as we must, and conclude he raises both legal
and factual sufficiency challenges. See Tex. R. App. P. 38.9. In his fourth issue, Trevino
essentially challenges the sufficiency of the evidence to convict him of (1) the murder of
Meza, and (2) the aggravated assault of Serrato. In particular, Trevino asserts that there
is no evidence that he knowingly and intentionally committed murder and, because the
charge did not contain an instruction regarding transferred intent, the hypothetically correct
jury charge analysis is not applicable. Regarding the aggravated assault charge in the
indictment, Trevino argues that the evidence is insufficient to prove the offense. He also
argues that the evidence of identification is insufficient. The State counters that the
hypothetically correct jury charge would have included the doctrine of transferred intent and
the evidence is sufficient to convict Trevino of murder. The State also responds that
evidence is sufficient to support the aggravated assault conviction.

A. Standards of Review


1. Legal Sufficiency


 A legal-sufficiency challenge calls on us to review the relevant evidence in the light
most favorable to the verdict. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004); Swearingen v. State, 101 S.W.3d 89,
95 (Tex. Crim. App. 2003) (en banc); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000) (en banc). We consider all the evidence that sustains the conviction, whether
properly or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App.
2001) (citing Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc)). 
Similarly, we consider all the evidence that sustains the conviction, whether submitted by
the prosecution or the defense, in determining the legal sufficiency of the evidence. Cook
v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (en banc); King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000) (en banc). In this review, we do not reevaluate the weight
and credibility of the evidence, but rather, act only to ensure that the jury reached a rational
decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (en banc). 

 The legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); Swartz v. State, 61 S.W.3d 781, 786 (Tex.
App.-Corpus Christi 2001, pet. ref'd). This standard of legal sufficiency ensures that a
judgment of acquittal is reserved for those situations in which there is an actual failure in
the State's proof of the crime rather than a mere error in the jury charge submitted. Malik,
953 S.W.2d at 240. We then determine if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319;
Johnson, 23 S.W.3d at 7. 

 If we reverse a criminal case for legal insufficiency, we reform the judgment of
conviction to reflect conviction for a lesser offense only if a jury charge on the lesser
offense was either submitted or requested but denied. Collier v. State, 999 S.W.2d 779,
782 (Tex. Crim. App. 1999). Otherwise, we vacate the judgment of conviction for legal
insufficiency and order a judgment of acquittal. Swearingen, 101 S.W.3d at 95. 

2. Factual Sufficiency


 We are constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the elements of the
offense with which Trevino was charged. The Texas Court of Criminal Appeals has
restated the factual sufficiency standard of review:

 There is only one question to be answered in a factual sufficiency
review: Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by
itself, evidence supporting the verdict may be too weak to support the finding
of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been
met, so the guilty verdict should not stand. This standard acknowledges that
evidence of guilt can 'preponderate' in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt. 
Stated another way, evidence supporting guilt can 'outweigh' the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt
standard. 


Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). A clearly wrong and
unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias." Prible v. State, No. AP-74,487, 2005 Tex.
Crim. App LEXIS 110, at *16-*17 (Tex. Crim. App. January 26, 2005) (designated for
publication). 

 When the State bears the burden of proof, the proof of guilt is factually insufficient
if it is so obviously weak as to indicate that a manifest injustice has occurred or if it is
greatly outweighed by contrary proof. Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim.
App. 2003). In determining the factual sufficiency of the elements of the offense, we view
all the evidence neutrally, not through the prism of "the light most favorable to the
prosecution." Johnson, 23 S.W.3d at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996)). 

 In conducting a factual-sufficiency review, we review the evidence weighed by the
jury that tends to prove a material disputed fact and compare it with evidence that tends
to support disprove it. Johnson, 23 S.W.3d at 7. We are authorized to disagree with the
fact finder's determination. Id. However, we approach a factual sufficiency review with
appropriate deference to avoid substituting our judgment for that of the fact finder. Id. Our
evaluation should not intrude substantially on the fact finder's role as the sole judge of the
weight and credibility given to witness testimony. Id. 

 We always remain aware of the fact finder's role and unique position, a position we
are unable to occupy. Id. at 9. Exercise of our authority to disagree with the fact finder's
determination is appropriate only when the record clearly indicates our intervention is
necessary to stop manifest injustice. Id. 

 Every fact need not point directly and independently to the accused's guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can
rest on the combined and cumulative force of all the incriminating circumstances. Id. We
reverse a judgment of conviction only if proof of guilt is so obviously weak and manifestly
unjust or the contrary evidence is so strong that the standard of proof beyond a reasonable
doubt could not have been met. Prible, 2005 Tex. Crim. App. LEXIS 110, at *17. 

 In conducting a factual sufficiency review, we review all the evidence. Cain v. State,
958 S.W.2d 404, 408 (Tex. Crim. App. 1997). In the opinion, we "show our work" when we
consider and address the appellant's main argument for urging insufficiency of the
evidence. Tex. R. App. P. 47.1; Sims, 99 S.W.3d at 603 ("A proper factual sufficiency
review must include a discussion of the most important and relevant evidence that supports
the appellant's complaint on appeal."). This practice benefits the parties, maintains the
integrity of the justice system, and improves appellate practice. Id. 

 If we reverse a criminal case for factual insufficiency, we vacate the judgment of
conviction. Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal case
reversed for factual insufficiency so a second jury has the chance to evaluate the evidence. 
Swearingen, 101 S.W.3d at 97. 


B. The Law Applicable to the Sufficiency Analysis for Murder

1. The Hypothetically Correct Charge

 A hypothetically correct charge is one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or restrict
its theories of liability, and adequately describes the particular offense proof. Malik, 953
S.W.2d at 240; Cano v. State, 3 S.W.3d 99, 105 (Tex. App.-Corpus Christi 1999, pet.
ref'd). A hypothetically correct jury charge would not simply quote from the controlling
statute. Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited
by the statutory elements of the offense as modified by the charging instrument. See Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Malik flatly rejects use of the jury
charge actually given as a means of measuring sufficiency of the evidence. See Gollihar
v. State, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001). Malik controls sufficiency of the
evidence analysis even in the absence of alleged jury charge error. Id. at 255. (7) A
hypothetically correct jury charge would include the doctrine of transferred intent. (8)
 See
Manrique v. State, 994 S.W.2d 640, 647-48 (Tex. Crim. App. 1999) (en banc); Swartz v.
State, 61 S.W.3d at 786. 

2. The Elements of Murder Under Penal Code §19.02(b)(2)-Transferred Intent

 Murder is a "result of conduct" offense. Cook v. State, 884 S.W.2d 485, 490 (Tex.
Crim. App. 1994) (en banc). A person commits the offense of murder if he intends to
cause serious bodily injury and commits an act clearly dangerous to human life that causes
the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 2003). A person
acts intentionally or knowingly with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result. Tex. Pen. Code Ann. § 6.03(a), (b)
(Vernon 2003) (defining culpable mental states of intentionally and knowingly); Castillo v.
State, 71 S.W.3d 812, 817 (Tex. App.-Amarillo 2002, pet. ref'd). Further, a person is
nevertheless criminally responsible for causing a result if the only difference between what
actually occurred and what he desired, contemplated, or risked is that: (1) a different
offense was committed; or (2) a different person or property was injured, harmed, or
otherwise affected. Tex. Pen. Code Ann. § 6.04(b)(2) (Vernon 2003). Under the statute,
a defendant can be held "criminally responsible," that is, guilty for the death of another
even if he did not intend to harm the victim so long as he caused the actual victim's death
while acting with the intent to kill a different person. Chimney, 6 S.W.3d at 700. Thus,
criminal responsibility via transferred intent is an issue to be determined during the
guilt-innocence phase. Id. In that regard, all the State need prove is that the only
difference between what actually occurred and what the accused intended or knew would
occur is that he caused the death of someone other than the one he tried to kill. Castillo,
71 S.W.3d at 817. Trevino asserts that the evidence shows Meza's death was accidental
and not intentional. 


3. The Elements of Murder Under Penal Code §19.02(b)(1)-Specific Intent

 We must decide whether a rational trier of fact could have found beyond a
reasonable doubt that Trevino (1) intentionally or knowingly caused the death of Meza, or
(2) intended to cause serious bodily injury and committed an act clearly dangerous to
human life that caused the death of Meza. Tex. Pen. Code Ann. § 19.02(b)(1), (2) (Vernon
2003). A person acts intentionally with respect to the result of his conduct when it is his
conscious objective or desire to cause the result. Tex. Pen. Code Ann. § 6.03(a) (Vernon
2003). A person acts knowingly with respect to the result of his conduct when he is aware
his conduct is reasonably certain to cause the result. Id. at § 6.03(b) (Vernon 2003). 
When a general verdict is returned and the evidence is sufficient to support a finding under
any of the paragraphs submitted, the verdict will be applied to the paragraph finding
support in the facts. Amis v. State, 87 S.W.3d 582, 587 (Tex. App.-San Antonio 2002, pet.
ref'd) (citing Manrique, 994 S.W.2d at 642). 

 Trevino challenges the sufficiency of the evidence to prove the requisite culpable
mental state for murder. As is almost always the case, Trevino's intent must be
established by circumstantial evidence. See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.
App. [Panel Op.] 1978). The jury may infer the requisite intent from any facts which tend
to prove its existence, including the acts, words, and conduct of the accused, the method
of committing the crime, and the nature of the wounds inflicted on the victims. Manrique,
994 S.W.2d at 649 (J. Meyers, concurring); see Conner, 67 S.W.3d at 197. If a deadly
weapon is used in a deadly manner, the inference is almost conclusive that the defendant
intended to kill. Adanandus v. State, 866 S.W.2d 210, 215 (Tex. Crim. App.1993); see 
Bell v. State, 501 S.W. 2d 137, 138 (Tex. Crim. App. 1973); Guerrero v. State, 655 S.W.2d
291, 292 (Tex. App.-Corpus Christi 1983, no writ). In fact, where a deadly weapon is fired
at close range and death results, the law presumes an intent to kill. Womble v. State, 618
S.W.2d 59, 64 (Tex. Crim. App. 1981). 

C. Analysis

1. Penal Code §19.02(b)(1)

 While stopped at an intersection while driving, Serrato saw Trevino approach in
another vehicle. Serrato identified Trevino as the shooter. Four shots shattered the driver-side window of Serrato's vehicle and one pierced the driver-side door. Serrato sustained
bullet wounds to his face and arm. Meza sustained bullet wounds to his upper left torso
resulting in his death. Trevino continued to shoot at Serrato's vehicle while in pursuit. A
rear tire of Serrato's vehicle blew out. The vehicle also sustained a bullet hole near the
rear license plate. 

 From the evidence that Trevino shot five times at the driver side of Serrato's vehicle,
the jury could conclude beyond a reasonable doubt that Trevino caused the death of Meza,
although he intended to cause the death of Serrato, under a transferred intent theory. A
rational jury could have reasonably inferred that Trevino intended to shoot and kill Serrato,
saw him in the car, fired, and instead killed Meza. A rational jury, however, could also
conclude beyond a reasonable doubt that, by shooting at the vehicle, both while beside it
and in pursuit, Trevino intended to cause the deaths of the vehicle's occupants, Serrato
and Meza. The jury could reasonably infer Trevino's specific intent to kill when he used
a deadly weapon to repeatedly shoot at an occupied vehicle. See Adanandus, 866 S.W.2d
at 215. Thus, a jury could have found beyond a reasonable doubt that Trevino intentionally
and knowingly caused the death of Meza by shooting him with a gun. We conclude the
evidence was legally sufficient to sustain the murder conviction. See Sanders v. State, 119
S.W.3d 818, 820 (Tex. Crim. App. 2003). Viewed in the light most favorable to the verdict,
we conclude that the evidence is legally sufficient to support the murder conviction, both
under a transferred intent theory applying Malik and under a specific intent theory applying
Manrique. See Malik, 953 S.W.2d at 240; Manrique, 994 S.W.2d at 649. 

 That the evidence of guilt was not free of contradiction and that the credibility of
witnesses may have been subject to question does not require us to conclude that the
verdict was factually insupportable. See Zuliani, 97 S.W.3d at 593-94. Those
circumstances merely create issues for the jury to resolve. Id. The jury is the exclusive
judge of the credibility of the witnesses and of the weight to be given their testimony. Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 1981); Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979). We will not reverse unless (1) the evidence of Trevino's guilt, taken alone,
is too weak to support the finding of guilt beyond a reasonable doubt; or (2) the contrary
evidence is so strong that the standard of proof beyond a reasonable doubt could not have
been met. Zuniga, 144 S.W.3d at 484-85. Viewing the relevant evidence in a neutral light,
favoring neither the prosecution nor the defense, and with appropriate deference to the
jury's credibility determinations, we conclude that the evidence supporting the verdict is not
too weak to support the jury's finding of guilt beyond a reasonable doubt. Nor is the weight
of the evidence contrary to the verdict strong enough that the State could not have met its
burden of proof. Id. We conclude that the evidence is factually sufficient to support
Trevino's conviction. 

 We reject Trevino's argument that the absence of transferred intent in the jury
charge precluded a finding of criminal responsibility for murder. The Malik court itself
anticipated the review of theories that were raised by the evidence, but not charged in the
jury charge, or even in the indictment, where such theories are permitted by law and
authorized by the indictment. Manrique, 994 S.W.2d at 647-48; Swartz, 61 S.W.3d at 786. 
When the indictment alleges alternate theories of committing the same offense, it is proper
for the jury to be charged in the disjunctive and to return a general verdict of guilty. Tex.
Code Crim. Proc. Ann. art. 37.07, § 1(a) (Vernon Supp. 2004-05) (verdict must be
general); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (en banc). The
conviction will be upheld if the evidence is sufficient to support a finding of guilt under any
one of the theories submitted. Kitchens, 823 S.W.2d at 258; see Aguirre v. State, 732
S.W.2d 320, 326 (Tex. Crim. App. 1987) (en banc); Yandell v. State, 46 S.W.3d 357, 363
(Tex. App.-Austin 2001, pet. ref'd). 

 The jury returned a general verdict. We have concluded that the evidence is
sufficient to support a finding under section §19.02(b)(1). See Tex. Pen. Code Ann.
§19.02(b)(1) (Vernon 2003). Thus, the verdict will be applied to the paragraph finding
support in the facts. Amis, 87 S.W.3d at 587. 

 Even so, the evidence is legally and factually sufficient to support Trevino's
conviction under the State's alternate theory. We turn to the State's alternate theory. 
Kitchens, 823 S.W.2d at 258.

2. Penal Code §19.02(b)(2)

 A person commits the offense of murder under § 19.02(b)(2) if he intends to cause
serious bodily injury and commits an act clearly dangerous to human life that causes the
death of an individual. Tex. Pen. Code Ann. §19.02(b)(2) (Vernon 2003). The elements
of murder under this section are that the person (1) intends to cause serious bodily injury,
(2) commits an act clearly dangerous to human life, (3) that causes the death of an
individual. See id. "Serious bodily injury" is bodily injury that creates a substantial risk of
death or causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any "bodily member or organ." Tex. Pen. Code Ann. § 1.07(a)(46)
(Vernon Supp. 2004-05); Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). The
State bears the burden of showing that an assault caused serious bodily injury. Moore v.
State, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (en banc). 

 In a prosecution under section 19.02(b)(2), an intent to kill is not required. Tex. Pen.
Code Ann. § 19.02(b)(2) (Vernon 2003); Ortiz, 651 S.W.2d at 767 (citing Garcia v. State,
541 S.W.2d 428, 430 (Tex. Crim. App.1976)); see also Fazzino v. State, 531 S.W.2d 818
(Tex. Crim. App.1976), overrruled on other grounds, Dockery v. State, 542 S.W.2d 644,
650 (Tex. Crim. App. 1975). It is sufficient to show only the intent to cause serious bodily
injury. Garcia, 541 S.W.2d at 430. Murder under section 19.02(a)(2) is a "result" type of
a crime. Lugo-Lugo v. State, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983) (en banc). Since
an act that was intended to cause serious bodily injury may not have been intended to be
clearly dangerous to human life, the statute requires that the character of the act be
measured by an objective standard. Id. By authorizing a conviction for murder by
intending to cause death by an act, regardless of its magnitude, or by intending to cause
serious bodily injury, by an act clearly dangerous to human life, the legislature has
determined that §19.02(b)(1) and (b)(2) are functionally equivalent. Id. A jury may infer
intent from the acts and words of the defendant, the manner in which the offense was
committed, the nature of the wounds inflicted, and the relative size and strength of the
parties. Nickerson v. State, 69 S.W.3d 661, 667 (Tex. App.-Waco 2002, pet. ref'd) (citing
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (en banc)); West v. State,
846 S.W.2d 912, 914 (Tex. App-Beaumont 1993, pet. ref'd)).

 Based on the allegations of the indictment, the central issue is whether Trevino
intended to cause serious bodily injury to Meza when he shot at Serrato's vehicle. The
jury, as sole trier of the facts, could infer the intent to cause serious bodily injury from the
use of a deadly weapon. Lugo-Lugo, 650 S.W.2d at 81; see also Adanandus, 866 S.W.2d
at 215. "Deadly weapon" is defined as anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury. Tex. Pen. Code Ann. §
1.07(a)(17)(B) (Vernon Supp. 2004-05); Ferrel, 55 S.W.3d at 589. A "firearm" is a deadly
weapon per se. Stewart v. State, 532 S.W.2d 349, 350 (Tex. Crim. App. 1976). The
commission of an act clearly dangerous to human life suffices to support a conviction for
murder under section 19.02(b)(2) of the Texas Penal Code and is not an accidental or
reckless act. See Tex. Pen. Code Ann. § 19.02(b)(2); Martinez v. State, 16 S.W.3d 845,
848 (Tex. App.-Houston (1st Dist.) 2000, pet. ref'd).

 Viewed both under the Jackson and Zuniga standards, the evidence showed
Trevino intentionally and knowingly fired at Serrato's vehicle. Jackson, 443 U.S. 319;
Zuniga, 144 S.W.3d at 484-85. Firing a weapon into an occupied vehicle is, by the nature
of the conduct, reasonably certain to result in death. See Medina v. State, 7 S.W.3d 633,
640 (Tex. Crim. App. 1999). Trevino continued to shoot while in pursuit of the occupied
vehicle. We conclude the evidence was legally sufficient to support the conviction under
section 19.02(b)(2). We further conclude that the evidence supporting the verdict is not
too weak for a jury to find guilt beyond a reasonable doubt, nor is the weight of the contrary
evidence strong enough that the State could not have met its burden of proof. We
conclude the evidence was factually sufficient.

 Thus, the transferred intent theory is not the only theory for which there is sufficient
evidence to support Trevino's murder conviction. The evidence is legally and factually
sufficient to support the conviction applying the proper standards of review. We now turn
to that part of Trevino's fourth issue asserting insufficiency of the evidence to sustain the
aggravated assault conviction.

VI. SUFFICIENCY OF THE EVIDENCE-AGGRAVATED ASSAULT

A. Hypothetically Correct Jury Charge for Aggravated Assault

1. Elements of Aggravated Assault


 A person commits assault by intentionally, knowingly, or recklessly causing bodily
injury to another, including the person's spouse. Tex. Pen. Code Ann. § 22.01(a)(1)
(Vernon Supp. 2004-05). The elements of aggravated assault are that a person commit
assault and either: (1) cause serious bodily injury to another; or (2) use or exhibit a deadly
weapon during the commission of the assault. Id. at § 22.02(a) (Vernon Supp. 2004-05);
Ferrel, 55 S.W.3d at 589. 

2. Definitions of Terms in the Assault Statute

 "Bodily injury" means physical pain, illness, or any impairment of physical condition. 
Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon Supp. 2004-05); Nelson v. State,
612 S.W.2d 605, 607 (Tex. Crim. App. [Panel Op.] 1981). "Serious bodily injury" is bodily
injury that creates a substantial risk of death or causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any "bodily member or
organ." Tex. Pen. Code Ann. § 1.07(a)(46) (Vernon Supp. 2004-05); Ferrel, 55 S.W.3d
at 589. The State bears the burden of showing that an assault caused serious bodily
injury. Moore, 739 S.W.2d at 352. To show protracted loss of a "bodily member or organ,"
the State must show that the injuries were "either continuing, dragged out, drawn out,
elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn,
never-ending, ongoing, prolix, prolonged, or unending." Id.

 "Deadly weapon" is defined as anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(B)
(Vernon Supp. 2004-05); Ferrel, 55 S.W.3d at 589. An object may be a deadly weapon
by its manner of use. See Adame v. State, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002)
(Meyers, J., concurring). If an actor uses or intends to use an object in such a way that the
object is capable of causing death or serious bodily injury, it is a deadly weapon. Id. In
determining whether an object is a "deadly weapon," a jury may consider (1) the physical
proximity between the alleged victim and the object, (2) any threats or words used by the
accused, (3) the size and shape of the object, (4) the potential of the object to inflict death
or serious injury, and (5) the manner in which the accused allegedly used the object. Id. 
No one factor is determinative. Id. Each case must be examined on its own facts. Id. 
Finally, the use of a deadly weapon during the commission of an assault does not create
an inference of serious bodily injury. Moore, 739 S.W.2d at 352. 


3. Identity

 Trevino complains that the evidence was legally and factually insufficient to prove
the element of identity, stating that the only person placing him at the scene was Carol
Cruz. Where identity is an issue in the case, the identity of the perpetrator may be proved
by direct or circumstantial evidence. Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App.
1986) (en banc) (evidence as to the identity of the perpetrator of an offense can be proved
by direct or circumstantial evidence). In our sufficiency review, we are governed by the fact
that the jury is the exclusive judge of the facts proved, the credibility of the witnesses, and
the weight to be given to the testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979); Earls, 707 S.W.2d at 85. The jury may believe or disbelieve all or any part of a
witness's testimony, even though the witness's testimony has been contradicted. Earls,
707 S.W.2d at 85 (citing Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.1986)). 
Reconciliation of conflicts in the evidence is within the exclusive providence of the jury. Id. 
(citing Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.1996)). 

B. Analysis 

1. Aggravated Assault

 Serrato testified that Trevino shot him. Serrato sustained five wounds: two shots
on his left arm, one on his lip, one on his chest, and one on his right arm. When bullets
struck, Serrato felt like he was drowning and could not move his left arm. Serrato saw a
bone protruding from his arm. He drove away from the scene "running for [his] life." 
Serrato testified that his lip was "blown off." He underwent surgery for his injuries. At the
time of trial, Serrato testified he was disabled. 

 A hypothetically correct jury charge would instruct the jury to find Trevino guilty of
aggravated assault of Serrato if it found that Trevino used or exhibited the semiautomatic
gun as a deadly weapon. See Tex. Pen. Code Ann. § 22.02(a) (Vernon Supp. 2004-05);
see also Ferrel, 55 S.W.3d at 589; Malik, 953 S.W.2d at 240. 

2. Identity

 The evidence showed that an eyewitness to the shooting, Carol Cruz, was not able
to identify Trevino from a photo lineup a few days after the shooting. At the trial, Cruz
identified Trevino as the shooter. Serrato testified that Trevino was the shooter. Serrato
identified Trevino to law enforcement immediately after the offense. The evidence at trial
showed that Trevino, not anyone else, was the shooter. Considering all the evidence that
sustains the conviction in the light most favorable to the verdict, measured by the
hypothetically correct jury charge for aggravated assault, we find that a rational trier of fact
could have found beyond a reasonable doubt that Trevino was the shooter. Jackson, 443
U.S. at 319. Viewed in a neutral light and with appropriate deference to the jury's credibility
determinations, we conclude that the evidence supporting Trevino as the shooter is not too
weak to support the jury's finding of guilt beyond a reasonable doubt. Zuniga, 144 S.W.3d
at 484-85; Earls, 707 S.W.2d at 85. Nor is the weight of the evidence contrary to the
verdict strong enough that the State could not have met its burden of proof at trial. Zuniga,
144 S.W.3d at 484-85. 

3. Disposition

 The jury could have inferred that Trevino's use of the semiautomatic gun was
capable of causing Serrato's death or serious bodily. The jury could have found beyond
a reasonable doubt that Trevino used a deadly weapon to assault Serrato. Regarding
identity, the jury was free to accept or reject the evidence before it. The jury was the sole
judge of the credibility of the witnesses. The jury resolved the issues before it and
concluded Trevino was the shooter. 

 Considering all the evidence that sustains the conviction, measured against the
deadly weapon element of aggravated assault as defined by the hypothetically correct jury
charge for the offense, we conclude that a rational trier of fact could have found beyond
a reasonable doubt all the elements of aggravated assault. Thus, we conclude the
evidence was legally and factually sufficient. See Jackson, 443 U.S. at 319; Zuniga, 144
S.W.3d at 484-85. We overrule Trevino's fourth issue.

VII. CONCLUSION

 We affirm the judgment. 

 ERRLINDA CASTILLO

 Justice

Concurring Opinion by 

Justices Hinojosa and Yañez

 

Dissent to Concurring Opinion by

Justice Castillo

 

Do not publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 9th day of June, 2005.

 
1. Penal Code section 19.02(b)(2) states that a person commits an offense if he intends to cause
serious bodily injury and commits an act clearly dangerous to human life that causes the death of an
individual. See Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 2003).
2. Penal Code section 19.02(b)(1) states that a person commits an offense if he intentionally or
knowingly causes the death of an individual. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003).
3. Although the legislature did not define the term "same criminal transaction," in Feldman v. State,
71 S.W.3d 738, 752-53 (Tex. Crim. App. 2002), a capital murder case, the court of criminal appeals
interpreted that phrase to mean "a continuous and uninterrupted chain of conduct occurring over a very short
period of time . . . in a rapid sequence of unbroken events." Feldman, 71 S.W.3d at 752-53 (citing Jackson
v. State, 17 S.W.3d 664, 669 (Tex. Crim. App. 2000)); see also Rios v. State, 846 S.W.2d 310, 311-12 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 1051 (1993); Vuong v. State, 830 S.W.2d 929, 941 (Tex. Crim. App.
1992) (en banc), cert. denied, 506 U.S. 997 (1992).
4. Article 21.24 (a) of the Code of Criminal Procedure states:


(a) Two or more offenses may be joined in a single indictment, information, or
complaint, with each offense stated in a separate count, if the offenses arise out of
the same criminal episode, as defined in Chapter 3 of the Penal Code.

 

Tex. Code Crim. Proc. Ann. art. 21.24 (Vernon 1989). 
5. In the motion, Trevino requested the Court to quash count one in the indictment because the State
relied on section 19.02(b)(2) of the Texas Penal Code for a result-oriented murder charge. 
6. Texas Penal Code Annotated section 19.02(b)(2) reads as follows:

 

 A person commits an offense if he: 

 

 (1) intentionally or knowingly causes the death of an individual;


 (2) intends to cause seriously bodily injury and commits an act clearly dangerous to human
life that causes the death of an individual; or 


 (3) commits or attempts to commit a felony, other than manslaughter, and in the course of
and in furtherance of the commission or attempt, or in immediate flight from the commission
or attempt, he commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual. 

 

 Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 2003).
7. Although Malik involved a challenge to the legal sufficiency of the evidence, we discern nothing in
the opinion that limits its holding to that category of sufficiency challenges. Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997); see also Reaves v. State, 970 S.W.2d 111, 116 (Tex. App.-Dallas 1998, no pet.). 
This Court measures the factual sufficiency of the evidence against a hypothetically correct jury charge. Adi
v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet. ref'd).
8. This statutory principle of "transferred intent" is raised when there is evidence a defendant with the
required culpable mental state intends to injure or harm a specific person but injures or harms a different
person or both. Manrique v. State, 994 S.W.2d 640, 647 (Tex. Crim. App.1999) (en banc) (J. McCormick,
concurring).