Juan Luis CARDENAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–00493–CR.

Court of Appeals of Texas, Dallas.

April 24, 1998.

Lawrence B. Mitchell, John H. Hagler, Dallas, for Appellant.

Sue Korioth, Assistant District Attorney, Karen R. Wise, Assistant District Attorney, for State.

Before CHAPMAN, MORRIS and WRIGHT, JJ.

## OPINION

MORRIS, Justice.

After a trial by jury, Juan Luis Cardenas appeals his conviction and life sentence for the murder of David DeLeon. He contends the evidence is legally and factually insufficient to prove he was the person who committed the murder. He also contends the trial court erroneously admitted out-of-court statements of a witness who died before trial. Finally, he claims he was denied effective assistance of counsel. We affirm the trial court's judgment.

### BACKGROUND

David DeLeon, the 14–year–old murder victim, attended a classmate's fifteenth birthday party with his older brother and some

friends. Appellant attended the same party with his girlfriend and a friend named Joey Cordova. At the party, one of David's friends, Angel Nunez, got into a fist fight with Joey Cordova on the front lawn. The evidence indicates that another guest, Alex Morales, fired a gun in the direction of the scuffle to break it up. The fight broke up, and Angel joined his friends, who were getting into a pickup truck to leave the party. As the truck pulled away, two men came out of the house and started shooting at the truck. David, who was in the bed of the truck, died from a gunshot wound to the head. A firearms examiner testified David was killed by a .25–caliber bullet fired from a semi-automatic weapon.

The victim's brother, Steve DeLeon, testified that he was in the cab of the pickup when his brother was shot. He identified the two gunmen as appellant and Alex Morales. He said appellant wore a "Sox" baseball jersey and carried a small, square gun, not a revolver, and was standing closer to the truck than Alex. Both appellant and David were in Steve's line of vision at the moment David was hit. Steve had no doubt appellant was the gunman who shot his brother. He said there was "no way" he could have mistaken appellant for Alex because appellant was bigger and had facial hair.

Angel Nunez also testified. He said that, after his fist fight with Joey Cordova broke up, he saw appellant come out of the house. Anticipating that shooting would start again, he ducked his head down. He did not see who shot David.

Another witness, the party hostess, testified that appellant, Alex Morales, and Joey Cordova followed the victim's group as they left the party. Joey got into a fight with Angel, but it broke up and things appeared to calm down. When the gunfire started, she was near the front door behind Alex. She said appellant was closer to the truck. She could not see anything in appellant's hands before the shooting started. But once firing began, she said, some men tried to wrestle Alex's gun from him. She could still hear gunfire after Alex was wrestled to the ground. She testified Alex used a revolver.

Four defense witnesses, who were friends and acquaintances of appellant, testified that Alex Morales and Ezekiel Martinez, not appellant, were the two men who came out of the house with guns. They said that appellant looked like Alex, and that Alex, not appellant, stood near the truck and fired. They also testified appellant wore a "Pittsburgh" jersey not a "Sox" jersey.

Appellant denied any involvement in the shooting. Nonetheless, he testified that he ran away after the shooting started and left his girlfriend at the party. He said he ran to a nearby convenience store where Ezekiel and Alex caught up with him. The police later arrived there and arrested appellant. Appellant was arrested because he matched a suspect's description broadcast over the police radio. In the book-in photograph that was admitted into evidence, it appears appellant is wearing a "Pittsburgh" jersey rather than a "Sox" jersey.

The arresting officer testified he also took appellant for a handwashing test to determine if he had recently fired a weapon. The test proved inconclusive. A police detective later explained that, unlike revolvers, automatic weapons frequently do not leave gunpowder residue. The detective also testified that appellant, after his arrest, told police he had borrowed a .25–caliber automatic weapon that evening. The detective further stated, contrary to the four defense witnesses, that Alex and appellant did not look alike.

### DISCUSSION

■ In his first point of error, appellant challenges the legal sufficiency of the evidence to prove he was the gunman who shot David DeLeon. The standard of review for a legal insufficiency claim is well established. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Because appellant challenges the sufficiency of the evidence to prove identity, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a

reasonable doubt that he was the person who shot the victim.

We first note that Steve DeLeon testified he witnessed the offense from a unique position of visibility under lighted conditions. He positively identified appellant as the person who shot his brother. The victim was killed by a .25–caliber bullet fired from an automatic weapon, and appellant admitted to police that he borrowed a .25–caliber automatic weapon that night. This evidence is legally sufficient to support the conviction. We overrule appellant's first point of error.

In his second point of error, appellant challenges the factual sufficiency of the evidence. The standard of review in analyzing a claim of factual insufficiency is clearly established. *Scott v. State*, 934 S.W.2d 396, 398–99 (Tex.App.—Dallas 1996, no pet.). We simply review the evidence in support of and contrary to the jury's finding that appellant was the shooter to determine whether the verdict is so contrary to the great weight of the evidence as to be clearly wrong and unjust.

We begin our review with observing that all the witnesses agree Alex Morales was one of the shooters; they only disagree with respect to where he was standing and who was with him. Two State's witnesses and one defense witness placed appellant on the front lawn at the time Alex was shooting. The party's hostess testified that the gunfire continued after Alex was wrestled to the ground by party guests. Two witnesses testified Alex used a revolver, while appellant admitted borrowing an automatic weapon that matched the characteristics of the murder weapon. Although appellant denied any involvement in the shooting, he also admitted he left his girlfriend at the party and fled the scene of the shooting. Such evidence of flight shows consciousness of guilt. *See Bigby v. State*, 892 S.W.2d 864, 884 (Tex.Crim. App.1994), *cert. denied*, 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995). Finally, Steve DeLeon positively identified appellant as the shooter who killed his brother.

On the other hand, the fact that Steve may have been mistaken that appellant wore a baseball jersey with "Sox" on it instead of "Pittsburgh" goes to the weight and credibility of his testimony. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App.1986). Additionally, appellant's four friends testified that this is a case of mistaken identity and that Alex, not appellant, was the shooter near the truck who killed David. Also, appellant's handwashing test for gunpowder residue was inconclusive.

Controverting the defense theory that Alex Morales was the murderer, the lead detective testified that appellant did not look like Alex. He also explained the absence of gunpowder residue on appellant's hands. Further, the defense theory that the State's witnesses mistook Alex, the shooter nearest the truck according to the defense witnesses, for appellant necessarily implies that the State's witnesses also mistook Ezekiel Martinez, the gunman closer to the house, as Alex. There is no testimony to support this defense theory with respect to whether Ezekiel Martinez looks like Alex.

Even in a factual insufficiency review, matters of credibility and what weight to give contradictory testimonial evidence are exclusively within the purview of the jury. *See Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997); *Scott*, 934 S.W.2d at 399. If reasonable minds could differ about conclusions to be drawn from the evidence, we may not reverse the verdict for factual insufficiency. *Scott*, 934 S.W.2d at 399. We have carefully examined the record, and we cannot conclude the evidence produced by the State to discharge its burden of proof with respect to identity is so uncertain, inconsistent, improbable, or unbelievable that it would be clearly unjust to allow the verdict to stand. We also cannot conclude the jury's finding that appellant committed this offense is against the great weight of the evidence. We overrule appellant's second point of error.

In his third point of error, appellant argues that the trial court erroneously permitted a police detective to testify about a written statement given by Alex Morales, who died in an unrelated incident before trial. The detective stated on cross-examination that certain witnesses implicated Alex in the

shooting. The following exchange then occurred between defense counsel and the detective:

Q. Did you not follow up on your information that Alex Morales was involved in this killing?

A. Yes, sir, I interviewed Alex Morales.

Q. Even though witnesses told you he [Alex] was shooting, you didn't see it necessary to file charges on him?

A. No, sir.

On redirect examination, the prosecutor asked the detective what he uncovered during his interview of Alex. Defense counsel objected "to anything Alex Morales may have told him." The prosecutor argued that defense counsel "opened the door," and the trial court overruled the objection.

The detective went on to testify that Alex admitted in a written statement he had a .22 caliber revolver at the party and that he (Alex) shot in the air to break up the fight between Angel and Joey. The prosecutor then asked what Alex said about appellant's involvement. The detective testified that Alex indicated appellant fired a .25–caliber automatic weapon towards the pickup truck and later bragged about shooting the victim.

▮ Appellant maintains the content of Alex's written statement was inadmissible hearsay. The State initially responds that appellant's objection was insufficient to preserve the error raised on appeal. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. TEX. R.APP. P. 52(a).[1] We agree appellant's objection to "anything Alex Morales may have told him" is imprecise; however, the hearsay ground was apparent to both the court and the prosecutor. Appellant's complaint is not waived.

▮ Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM. EVID. 801(d). An out-of-court statement is offered to prove the truth of the matter asserted if it is relevant only to the extent the factfinder believes it to be true and accurate. *See Bell v. State*, 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd). If the statement's probative value does not hinge on its truthfulness, then it is not offered to show the truth of the matter asserted and is not hearsay. *See id.* The State argues that Alex's out-of-court statements were not hearsay because they were not offered to prove the truth of the matter asserted but to show why the detective did not arrest Alex.

▮ The State's argument holds true only with respect to the out-of-court statements about Alex's *own* involvement in the shooting. Defense counsel attacked the detective's integrity by implying he had made an unreasonable or irresponsible decision not to arrest Alex. Alex's statement to the detective that he had no involvement in the murder but only shot in the air to break up the fight between Angel and Joey makes less probable defense counsel's implication that the detective was unreasonable or irresponsible in his decision not to arrest Alex. Further, the probative value of Alex's statement does not hinge on its truthfulness. That is, the jury could disbelieve at the time of trial Alex's statement that he only shot up in the air to break up a fight, but find that the detective believed Alex and, thus, made a reasonable decision not to arrest him. Consequently, the probative value of the statement to show why the detective did not arrest Alex did not hinge on the jury believing the statement; it hinged on the detective believing it. Accordingly, it is not hearsay.

▮ We arrive at a different conclusion, however, with respect to Alex's statements

---

1. The new rules of appellate procedure went into effect on September 1, 1997. The Texas Court of Criminal Appeals, in adopting the new appellate rules, expressly ordered that the new rules will govern all proceedings pending on September 1, 1997 "except to the extent that in the opinion of the court their application in a particular pro-

ceeding then pending would not be feasible or would work injustice, in which case the former procedure may be followed." We apply the old rule in this case, concluding it might work injustice to require appellant to preserve error under a rule that did not exist at the time of trial. *See* TEX.R.APP. P. 33.1.

about *appellant's* involvement in the crime. Although one bullet killed David DeLeon, the evidence clearly shows two different gunmen shot at the time David was murdered. Alex's statement to police that appellant fired the fatal bullet did not exclude Alex's possible liability or arrest as a party to the murder. Accordingly, Alex's out-of-court statements identifying appellant as the person who fired the bullet that killed the victim are nonprobative with respect to why the detective did not arrest Alex when Alex possibly could have been arrested as a party to the murder. As such, they are hearsay.

■■■ The State argues that appellant opened the door to this hearsay. But "opening the door" or "inviting" testimony that would otherwise pertain to inadmissible subject matter does not mean that such testimony is necessarily invited into evidence in *any* form, including hearsay. *Kipp v. State*, 876 S.W.2d 330, 337 (Tex.Crim.App.1994) (plurality opinion). In other words, a conclusion that appellant opened the door to the subject of why the detective did not arrest Alex does not suspend the hearsay rules. The State does not assert the applicability of any other hearsay exception. We conclude the trial court improperly overruled appellant's hearsay objection to Alex's out-of-court statements about appellant's involvement in this offense.

■■■ Our conclusion that error occurred does not end the inquiry, however. If an appellate record reveals error, we reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. TEX.R.APP. P. 81(b)(2).[2] The guidelines for making a harmless error analysis are well established. *See Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). The determinant is not whether the evidence is sufficient to convict without the inadmissible hearsay, but whether there is a reasonable possibility that the erroneously admitted evidence contributed to the jury's verdict. *Jones v. State*, 833 S.W.2d 118, 127 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 921,

113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). The error is harmful if there is a reasonable possibility the evidence, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt. *Id.*

■■ After carefully reviewing the evidence, we conclude there is no reasonable possibility that Alex's two out-of-court statements relating to appellant's involvement moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt. We realize that the prosecutor emphasized during closing argument Alex's statement that appellant bragged about shooting the victim. Nonetheless, we conclude for several reasons that the admission of both hearsay statements was harmless.

First, the information that appellant possessed a .25–caliber automatic weapon on the night of the murder was admitted without objection through the testimony of the detective. Any error in admitting that same information through Alex's hearsay statement was therefore harmless. *See Anderson v. State*, 717 S.W.2d 622, 627 (Tex.Crim.App. 1986). Second, the prosecutor did not seek to admit the hearsay until he believed, though erroneously, that appellant "opened the door." Thus, the State was not intentionally attempting to taint the trial process by offering Alex's statements. Third, the statements were made during a police interview by a gunman who was a suspect and potential codefendant in this case. We do not perceive the jury would place significant weight on a statement made by one suspect who attempts to implicate another in the crime. Fourth, the evidence of guilt, nearly all of which the jury heard before the hearsay was admitted, weighs heavily against a finding of harm. Appellant admitted he was at the party at the time of the shooting. He admitted he had borrowed a weapon that matched the characteristics of the murder weapon. He, Alex, and Joey followed the victim's group as they left the party. Appellant fled the party after the shooting, leaving

2. We apply former Texas Rule of Appellate Procedure 81(b)(2), the rule in effect at the time of appellant's trial, rather than new rule 44.2.

his girlfriend behind, and met up with the very people he claims are the shooters Alex and Ezekiel. Also, Steve DeLeon was in a unique position to view this offense and unequivocally identified appellant as the murderer. As the victim's older brother who did not know appellant before the offense, he had considerable motivation to be certain in his identification of his brother's killer. We note also that all four of appellant's friends who testified that this was a case of misidentification had never before told their story to investigative or prosecutorial authorities, although they had the opportunity to do so. Fifth, it is unlikely that this type of error will be repeated by the State with impunity because the trial court, in overruling appellant's objection, was the source of the error, and the circumstances of a potential codefendant dying before trial are somewhat rare.

Moreover, we conclude appellant's life sentence was not a reaction to the out-of-court statements, but an understandable response to the unprovoked, violent, and random killing of a fourteen year-old youth. We also note that during the punishment phase of trial, appellant put two witnesses on the stand who testified that appellant worked as a youth counselor and tutor providing "guidance" to boys and girls. These witnesses testified they would accept appellant back to work with children if the jury granted him probation. In light of this testimony, the life sentence could also be attributable to the jury's concern that appellant, a convicted murderer, would upon his release resume involvement with children the same age as his victim.

Based on the record before us, we cannot conclude the statement, one of several made by a suspect during police interrogation, moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt. We conclude beyond a reasonable doubt that the hearsay testimony, either alone or in context, made no contribution to appellant's conviction or punishment. We overrule appellant's third point of error.

■ Appellant next complains his trial counsel rendered ineffective assistance of counsel. When challenging counsel's effectiveness at the guilt stage, it is appellant's

burden to show by a preponderance of the evidence that (1) trial counsel's performance was deficient in that it fell below the prevailing professional norms, and (2) the deficiency "prejudiced" appellant; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. See *Rosales v. State*, 841 S.W.2d 368, 375 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We indulge a strong presumption that counsel was reasonably effective, and strategic choices made after reasonable investigation are almost unchallengeable. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex.Crim.App.1991).

■ Appellant claims that, in the event we conclude trial counsel opened the door for the admission of the hearsay statements complained of in his third point of error, trial counsel's questioning fell below professional norms. We have concluded trial counsel did not open the door for the admission of hearsay statements. As we stated previously, "opening the door" to a subject matter generally does not suspend hearsay rules, and the trial court improperly overruled in part defense counsel's hearsay objection. To the extent counsel's questioning opened the door to the non-hearsay testimony with respect to why the detective did not arrest Alex, such questioning was part of counsel's trial strategy to make a case of mistaken identification and in no way harmed appellant.

Finally, appellant contends counsel rendered ineffective assistance in failing to make a reasonable effort to exclude evidence that appellant told police he borrowed a .25–caliber automatic weapon on the night of the offense. Defense counsel did lodge an objection that the proper predicate had not been laid for the admission of appellant's oral statements. The parties then held a discussion off the record. The record resumes with the prosecutor's questioning and another objection to improper predicate, which the trial court overruled. Nonetheless, appellant complains defense counsel rendered ineffective assistance because he did not insist on a hearing to determine the admissibility of his

statement under article 38.22 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp. Pamph. 1998).

To show counsel was ineffective for failing to lodge an objection, appellant must show the trial court would have erred in overruling such objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Crim.App. 1996). The record is completely void of any information about the circumstances under which appellant's police statement was given. Any evidence was apparently received by the trial court off the record. Appellant cannot show on this record, and does not argue, that the trial court would have erred in overruling such an objection had one been made. Accordingly, we overrule appellant's fourth point of error.

We affirm the trial court's judgment.