IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ORIGINAL

PETITION FOR DISCRETIONARY REVIEW

WITH A PETITION

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 02 2015

Abel Acosta, Clerk

VINCENT PASCO,

    Appellant pro se

V.

THE STATE OF TEXAS,

    Appellee

FILED IN
COURT OF CRIMINAL APPEALS

DEC 02 2015

Abel Acosta, Clerk

Trial Case No. F-1259001-Y
On Appeal From The Criminal
District Court No. 7
Dallas County Texas
COA No: 05-14-00413-CR

In the Honorable Judge
MIKE SHIPES

Parties:

Vincent Pasco, #1920738
Connally Unit
899 FM 632
Kenedy, TX  78119

The State Of Texas

ORAL ARGUMENTS REQUESTED

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| Parties | 3 |
| Index of Authorities | 4 |
| Statement of the Case | 4-9 |

Issues Presented:

<u>Point of Error Number One:</u>
How Did the Court Of Appeals abuse its discretion by claiming the appelant did not show the evidence to be legally insufficient in order to sustain a conviction? — 9-10

<u>Point of Error Number Two:</u>
Did the Court of Appeals err by denying the ground that the Court erred by informing the jury about good conduct time? — 10-13

<u>Point of Error Number Three:</u>
Did the Court of Appeals err by denying the ground that the Trial Court did have jurisdiction to hear the instant case without a transferred order? — 13

| | |
|---|---|
| Prayer | 13 |
| Certificate of Service | 13 |
| Inmate Unsworn Declaration | 13 |

# INDEX OF AUTHORITIES

| | PAGE |
|---|---|
| Jackson v. Virginia | 4 |
| Fisher v. State | 4 |
| Narvaiz v. State | 4 |
| Guevara v. State | 5 |
| Matson v. State | 5 |
| Robertson v. State | 5 |
| Timothy Scott v. State | 7 |
| Dues v. State | 8 |
| King v. State | 8 |
| Lazano v. Lozano | 9 |
| Louis v. State | 9 |
| Urbano v. State | 9 |
| Murray v. State | 9 |
| Navarro v. State | 9 |
| Moore v. State | 9 |
| Wilson v. State | 9 |
| Orovio v. State | 9 |
| Almanza v. State | 10 |
| Rogers v. State | 10 |
| Daniell v. State | 10 |
| Hoang v. State | 12 |
| Ex parte Seidel | 12 |
| Heath v. State | 12 |
| Marin v. State | 12 |
| Mills v. State | 12 |
| Garcia v. State | 12 |
| Wynn v. State | 12 |

## STATEMENT OF THE CASE

Appellant was charged with murder by an indictment on or about the 27th of July A.D. 2012. (CR p.10). The indictment includes a second paragraph alleging the existence of a prior felony conviction. (CR p.10). Appellant pled not guilty to the indictment before the selected jury. (RR Vol.3, p.7). The jury found appellant guilty of the indicted offense. (RR Vol.4, p.114). The jury found the enhancement paragraph true and set sentence at life in prison. (RR Vol.4, p.141). Appellant's appeal was affirmed on October 26, 2015, from the Fifth District Court of Appeals in Dallas, Texas.

### Point of Error Number One:

How Did the Court of Appeals abuse its discretion by claiming the appellant did not show the evidence to be legally insufficient in order to sustain a conviction?

Appellant humbly submits that the evidence is legally insufficient to sustain appellant's conviction. When conducting a legal sufficiency review, the court assesses the evidence "in the light most favorable to the prosecution" and must ask, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). "If based on all the evidence, a reasonable doubt of the defendant's guilt, due process requires that the court reverse and order a judgment of acquittal." Fisher, 851 SW2d at 302 (quoting Narvaiz v. State, 840 SW2d 415, 423 (Tex. Crim.App. 1992); see also Guevara v. State, 152 SW3d 45, 49 (Tex. Crim.App. 2004). The legal sufficiency of the evidence is a

question of law.  Matson v. State, 819 Sw2d 839, 846 (Tex.Crim. App. 1991); Robertson v. State, 16 SW3d 156, 165 (Tex.App - Austin 2000 pet. ref'd).

## Zina Shaw's testimony

The Court of Appeals claims that appellant "confessed the murder" to Zina Shaw in a phone call shortly after the murder of Brown. "A 'confession' is generally regarded as an acknowledgement of all facts necessary to constitute guilt of the crime at issue." 41 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure § 13.02 (2nd ed. 2001).  In Shaw's testimony she asked appellant, "Was that you running across the freeway?".  Shaw then stated that "Appellant was mumbling and did not reply to her question". (RR Vol.3, p.279).  Shaw testified that she began the conversation by asking "Why would you put yourself in a situation like this?". Shaw said appellant responded by saying "It was either me or him. They tried to hoe me."  (RR Vol 3, p.279).  These statements recalled by Shaw did not supply the who, where, when, or how of the murder offense charged against appellant.  Shaw's testimony merely provides information describing a quote, "either me or him" situation and clearly, in the instant matter that is not the case. (Id).

## Shannon Wright testimony

Included in the evidence relied upon is Shannon Wright's testimony inferring that appellant and Brown were the only ones in the apartment at the time Brown was shot with a firearm.  However, when viewing the evidence shows that: (1) Banks and his people had motive in killing Brown, (2) Banks had a gun, (3) Banks

attended the drug house numerous times on the day of the murder, (4) the apartment had a front door and a bock door, was accessible to Banks and his people, (5) there was a spacious time gap ample enough for Banks and his people to enter the back door in-between the time Wright stepped out of the apartment and the time Wright heard "rambling" and "gunshots", there also being a significant time gap in-between the time Wright stepped out of the apartment and the time Wright finally kicked the door in, this, giving the perpetrator plenty of time to flee the scene unnoticed, and (6) the firearm that killed Brown was not discovered. It could not be distinguished whether the bullets were fired from one or more than one gun. According to Wright's testimony, Banks told Wright and Brown, "I'm going to tell you like this, the people I mess with, they ain't too happy that this dope came up missing." (RR Vol.3, p.41-43, 77). Wright said that "Banks was more upset than anyone else and he believed Banks was the one behind 'Man' being shot". (RR Vol.3, p.78). Wright stated that "Banks was the main person causing difficulty". (RR Vol. 3, p.76). Wright testified "Banks was bickering about missing drugs throughout the day". (RR Vol.3, p.78). Wright said that "Banks left quite a few times on the day of the murder." (RR Vol.3, p.83). Wright stated that "appellant was a quiet person and was not arguing about the missing drugs". (RR Vol.3, p.76). Wright indicated that him and appellant had a mutual relationship describing appellant as someone who, if there was a problem, would talk about it and then figure it out. (RR Vol.3, p.76). And finally, Ms. Thomas (a firearm and toolmark examiner) was unable to determine whether the bullets were fired from one or more than one gun. (RR Vol.3, p.245-46).

In Wright's testimony he sits outside the front door for a minute and smokes a cigarette, then hears the door close, then hears "rambling", then tries the screen door but it's locked, then yells out for appellant to open the door, still hears rambling, yanks the screen door open, knocks on the door nine times, then finally hears gunshots. Wright says that afterwards he goes to his mother's apartment, asks for the phone, calls Tron, then finally goes back to the apartment to kick the door down to find Brown deceased and appellant running out the back door. (R.R. Vol.4, P. 20-29) (R.R. Vol.3, P.54-

Wright's testimony, seemingly, incriminates appellant and can only compel speculation. "Although a jury may accept or reject any or all evidence adduced, a jury may not reach a verdict based on speculation." "A jury's verdict must be supported by evidence providing beyond a reasonable doubt every element of the offense of which a defendant is convicted." Timothy Scott v. State, 946 SW2d 166; 1997 Tex. App. LEXIS 2684.

## Intentionally or knowingly

"Intent may be inferred from acts, words, and the conduct of the accused." Guevana, 152 SW3d at 50; Patrick v. State, 906 SW2d 481, 487 (Tex.Crim.App. 1995); Dues v. State, 634 SW2d 304, 305 (Tex.Crim.App. 1982). The use of a firearm to cause death would establish that the perpetrator acted with intent to cause death. In the instant case, the deficiency in the State's evidence is that i. did not establish that appellant was the person who used the firearm to kill Brown. Coupled with the fact of there being a window of time enabling Banks and his people to enter through the back door and murder Brown unnoticed by Wright, contrary to

Banks, appellant was not arguing about missing drugs. Appellant shows no animosity or any expressions of anger, in fact, the record shows the contrary. Wright described appellant as someone who talked his problems out. The State's evidence merely places appellant at the scene of the crime. "Mere presence at the scene or in the vicinity of a crime, or even flight from the scene, either standing alone or combined, is insufficient to sustain a conviction. King v. State, 638 SW2d 903, 904 (Tex.Crim.App. 1982).

## Jordan Price testimony

The testimony of Jordan Price describing a "bright" skinned male running across the freeway cannot be overlooked. The State claims that Price identified appellant as the person who ran across the freeway. However, when going to the record, Price is asked to identify appellant in trial and Price's answer is "I don't know". When Price admits to pointing appellant out in a line-up it shows that the photo selected by Price is marked with the notation "I'm not sure." (RR Vol 4. p.68).

## Whether Evidence Presented was Sufficient

The evidence in the instant case contains a number of inferences that do not by themselves constitute proof of guilt. "A jury may not reasonably infer an ultimate fact from meager circumstantial evidence that simply raises a number of inferences, none more probable than another." Lozano v. Lozano, 52 SW3d 141, 142; 44 Tex.Sup.Ct.J. 499 (Tex. 2001).

When viewing the evidence as a whole in the scope of the record, a rational trier of fact can only speculate about who did the "rambling" and the shooting in apartment 204. "If circumstantial evidence provides no more than a suspicion, the jury is not

permitted to reach a speculative conclusion." <u>Louis v. State</u>, 159 SW3d 236, 246 (Tex.App. - Beaumont 2005, pet.ref'd). The evidence as a whole in the instant case only causes a strong suspicion. "Proof that amounts to only a strong suspicion of guilt or a mere probability of guilt is insufficient to sustain a conviction." <u>Urbano v. State</u>, 837 SW2d 114, 116 (Tex.Crim.App. 1992); <u>Murry v. State</u>, 138 Tex.Crim, 53, 134 SW2d 286, 287 (Tex.Crim.App. 1939); <u>Wynn v. State</u>, 847 SW2d 357, 359 (Tex.App.- Houston[1st Dist]), aff'd, 864 SW2d 539 (Tex.Crim.App. 1993); <u>Navarro v. State</u>, 810 SW2d 432, 435 (Tex.App. - San Antonio 1991, pet.ref'd)(citing <u>Moore v. Statte</u>, 640 SW2d 300, 302 (Tex.Crim.App. 1987)). More-over, mere opportunity to commit a crime does not tend to establish the fact of the accused's commission of the crime. <u>Wilson v. [214 SW3d 586] State</u>, 147 Tex. Crim. 653, 184 SW2d 141, 143 (Tex. Crim.App. 1944).

Finally, as the Supreme Court put it, criminal substantial due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. <u>Michelena -Orono</u>, 702 F2d at 506; see also <u>Gollihar</u>, 46 SW3d at 245-46. With the evidence in the instant case being legally insufficient, the Fourteenth Amendment guarantee of due process requires that the Court reverse and order an acquittal.

## Point of Error Number Two

Did the Court of Appeals err by denying the ground that the Court erred by informing the jury about good conduct time?

"There are two things that fill the mind with ever new and increasing admiration and awe... The starry heavens above and the moral law within."

## Facts In The Record

Please look at the (CR p.72-73) and (RR Vol.4, p.89).

This clearly shows that the State and Court of Appeals erred on this ground.

Appellant contends the trial court comments amounted to supplemental jury charge and we should therefore review the egregious harm standard of Almanza v. State, 686 SW2d 157 (Tex. Crim.App. 1984). In support, he relies on Rogers v. State, 38 SW3d 725 (Tex.App.- Texarkana 2001, pet.ref'd). During the punishment phase in Rogers, the trial court did not provide a jury instruction on the effect of a life sentence on parole eligibility. Id at 729; see Tex.Code Crim.Proc. art. 37.07 § 4(a). Then, during deliberations the trial court failed to provide a full and complete instruction in response to the jury's question on the same matter. Id.

The appellate court did not apply the Almanza standard because substantive responses to jury questions during deliber- ations amount to supplemental jury charges. Id. (citing Daniell v. State, 848 SW2d 145, 147 n.2 (Tex.Crim.App. 1993).

Unlike Rogers and the cases cited therein, the trial court's comments in the present case occurred during jury deliberations.

This ground should be granted for relief.

## Point of Error Number Three

Did the trial court lack jurisdiction to hear the instant case and render a judgment because the case was not transferred to its docket

## Summary Of Argument

Criminal District Court Number Seven had no jurisdiction over this case. Its judgment is void.

## Argument

The Texas Constitution provides that a court is vested with jurisdiction over a criminal case by the presentment of an indictment or information. Tex.Const. art.V, sec.12(b). An indictment is presented when it has been duly acted on by the grand jury and received by the trial court. Tex.Code Crim.Proc. art.12.06. Statutory provisions also codify the necessary result, implied by Art.V, sec.12 above that the trial court lacks jurisdiction in the absence of proper presentment. Tex.Code Crim.Proc. art.32.01 (requiring an indictment to be dismissed if not presented to the trial court by date certain). Once the indictment is presented jurisdiction is exclusive in the receiving court unless it is transferred to another court. Id. art.4.16.

The only mechanism for transferring the power to try a felony is by an order of transfer combined with an order of receiving. Combined, these constitute a written agreement between the two courts involved. The transferring court issues an order formally transferring jurisdiction over the case. The second court accepts the case by issuing a formal order receiving. See Tex.Govt.Code, sec.24.003.

The instant case was presented to Criminal District Court Number Three of Dallas County Texas. Jurisdiction was thus invested in that court. The instant case later appeared on Criminal District Court Number Seven where it remained through the entry

of judgment. However, there is nothing in the record showing that jurisdiction was ever transferred by Criminal District Court Number Three to Criminal District Court Number Seven. Therefore, it appears that the Criminal District Court Number Three "retains" jurisdiction, just as art.4.16 states. Appellant contends that Criminal District Court Number Seven never acquired jurisdiction in this matter.

Lack of jurisdiction over a case renders a trial court's judgment void. Ex parte Seidel, 39 SW3d 221 (Tex.Crim.App. 2001); Hoang v. State, 872 SW2d 694 (Tex.Crim.App. 1993). A defect which renders a sentence void may be raised for the first time on appeal. Heath v. State, 817 SW2d 335 (Tex.Crim.App. 1991).

The right to be tried in a court that has properly acquired jurisdiction over a case is absolute. See Marin v. State, 851 SW2d 275 (Tex.Crim.App. 1993). Such a right to cannot be waived or forfeited, even with consent. Id. Implementation is not optional, it is always required. Id. at 279. Error in this regard is not subject to further analysis. Thus, a defendant may complain about this violation of an absolute right on appeal without having raised the question in the trial court. Id. at 280.

Appellant now complains that Criminal District Court Number Seven never acquired jurisdiction over the instant case, but he acknowledges that authority is against his position. See e.g., Mills V. State, 742 SW2d 832, 835 (Tex.App.- Dallas 1987); Garcia v. State, 901 SW2d 731, 732-33 (Tex.App.-Houston[14th Dist.] 1995). These cases all hold that the present issue must be raised by the trial counsel or it is waived. However, they simply cite to their

antecedents without any constitutional or statutory authority for the proposition that a jurisdictional defect can be cured by procedural default.

## PRAYER

Petitioner PRAYS for relief deem just.
to God

## DECLARATION

"I, Vincent Pasco, TDCJ # 1920738, presently incarcerated in the TDCJ-CID at the Connally Unit in Karnes County Texas, declare under penalty of perjury that the facts stated in this PDR are true and correct and that I placed this document in the prison mailbox on this date."

"Executed on this the 23rd day of November 2015."

*Vincent Pasco #1920738*
Vincent Pasco, pro se

## CERTIFICATE OF SERVICE

I certify that on this the 23rd day of November 2015, I sent the following parties a true and correct copy of this PDR by U.S. mail thru the prison mail system in a postage paid package to the addressed listed below:

Court of Criminal Appeals
P.O. Box 12308, Capitol Station
Austin, TX 78711

Attn: Abel Acosta, Clerk

*Vincent Pasco #1920738*
Vincent Pasco, pro se

AFFIRM; and Opinion Filed October 26, 2015.



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

No. 05-14-00413-CR

_____

VINCENT PASCO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F-1259001-Y

# MEMORANDUM OPINION

Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

Vincent Pasco appeals his conviction and life sentence for murder. In three issues, appellant argues the evidence is insufficient to prove he was the person who committed the offense, he was denied due process by an instruction in the punishment charge about good-time credit and parole, and the trial court lacked jurisdiction. We affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Appellant (known as "Grinch") became acquainted with the victim, Derrick Brown, in connection with the sale of drugs at an apartment located in southern Dallas. On July 26, 2012, Brown was at the apartment with appellant, a man known as "Banks," Shannon Wright, and Chadrick Kennedy. Appellant, Wright and Brown stayed overnight; Banks and Kennedy did not. The next day, it was business as usual at the apartment. Customers arrived, and appellant,

Wright, and Brown sold them drugs. At some point appellant left to serve a customer. He left behind a pack of drugs, and Brown took it. Brown left the apartment for a short period of time, taking appellant's drugs with him. When Brown returned to the apartment, appellant and Wright were there. Banks appeared shortly thereafter with more drugs. Banks argued with Wright about the missing drugs, and then he left.

Wright's mother, who lived in the same complex in which the apartment was located, came by to get some money from her son. At that time, only appellant, Wright, and Brown were in the apartment. Wright stepped outside to talk to his mother. He gave her some money, and she returned to her residence in the complex. While Wright stayed outside to smoke a cigarette, he heard two gunshots. He tried to get into the apartment, but the door was locked. He looked through the blinds and saw blood on the walls. Wright went to his mother's residence and told her he thought Grinch had just shot Brown. Wright returned to the apartment and kicked in the door. He found Brown on the couch, bleeding from ear to ear. He saw appellant running out of the back door. Wright called out to appellant, but he did not stop.

DISCUSSION

**IDENTITY OF THE MURDERER**

In his first issue, appellant challenges the legal sufficiency of the evidence to prove he was the gunman who shot Brown.

**Legal Sufficiency of the Evidence**

When conducting a legal-sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State,* 55 S.W.3d 608, 613 (Tex. Crim. App.

–2–

2001). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The jury is free to accept or reject all or any part of a witness's testimony. *See id; Dumas v. State,* 812 S.W.2d 611, 615 (Tex. App.—Dallas 1991, pet. ref'd). This Court is only to ensure that the jury reached a rational conclusion, not to re-evaluate the weight and credibility of the evidence. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). Because appellant challenges the sufficiency of the evidence to prove identity, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt that he was in fact the person who shot the victim. *See Cardenas v. State,* 971 S.W.2d 645, 648–49 (Tex. App.—Dallas 1998, pet. ref'd). Viewed through this lens, we find ample evidence to support a reasonable juror's conclusion that appellant was the person who shot Brown.

Wright, who was present at the apartment on the day of the shooting, testified that the only people at the apartment at the time Brown was killed were Wright, Brown, and appellant. Wright knew appellant as Grinch. Wright stepped outside the apartment before Brown was shot. Wright heard two gunshots. He kicked in the door and found Brown on the couch bleeding from ear to ear. Wright saw appellant running out of the back door. He called out to him, but appellant did not stop or respond. Wright told the jury that he believed appellant shot and killed Brown.

Wright's mother also testified she heard the gunshots and saw appellant fleeing from the back of the apartment while holding a phone up to his ear. Wright's mother identified appellant in open court as that person and testified she knew him as Grinch.

Jordan Price testified that he was at a family gathering at the same apartment complex when the offense occurred. He heard the gunshots and saw a man with "bright" skin coming out

from the back of the complex through the parking lot. He testified the man had a gun tucked into the back of his pants. Price described the man as having long hair and wearing a peach colored shirt and baggy blue jeans. The man ran in front of Price and then across the freeway as he fled the scene. Price identified appellant as the man he saw fleeing from the apartment complex in a photo lineup.

Kennedy testified that he was not at the apartment on the day Brown was murdered. Cell phone records associated with Kennedy's cell phone number were introduced into evidence and showed that his phone made a call from a location in Irving, Texas, at the time of the offense. The evidence further established that neither Banks nor Kennedy physically resemble appellant.

Zina Shaw testified that she started dating appellant in March or April of 2012. Shaw stated appellant called her after Brown was murdered and talked to her about the offense. This led her to ask him why he did this and he replied, "It was me or him." "They tried to hoe me." Then Shaw asked appellant, "Was that you running across the freeway?" He said, "Yes."

In summary, three witnesses identified appellant and testified that they saw him flee from the scene of the crime shortly after hearing the gunshots. One witness saw a gun in appellant's waistband as appellant ran past him. Wright established a motive for the shooting, that being retribution for the theft of drugs, and established appellant and Brown were the only people in the apartment at the time of the shooting. Appellant told a girlfriend he shot Brown. From this evidence, the jury could have found, beyond a reasonable doubt, that appellant was the gunman who shot Brown. We overrule appellant's first issue.

INSTRUCTION CONCERNING GOOD CONDUCT TIME

In his second issue, appellant argues because he was ineligible for good conduct time, the trial court erred by including a jury instruction about good conduct time.

The complained of instruction tracks the language in article 37.07, section 4(a) of the

code of criminal procedure. This instruction is mandated by the code of criminal procedure. *See Campbell v. State,* No. 05-14-00563-CR, 2015 WL 4550678, at * 1-2 (Tex. App.—Dallas July 28, 2015, no pet), (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2014)). The article sets out the exact language the trial courts are required to include. *Id.* As described by the court of criminal appeals, the statutory parole charge instructs a jury in general terms about the existence and possible grant of parole. *Luquis v. State,* 72 S.W.3d 355, 360 (Tex. Crim. App. 2002). The instruction also refers to the concept of "good conduct time" and states that a person sentenced to prison might earn some reduction in his period of incarceration through the discretionary award of good-conduct time. *Id.* The instruction also warns the jury that it cannot accurately predict how the concepts of good-conduct time and parole might be applied to any particular person and thus it may not consider how those concepts might apply to the defendant. *Id.* The overall purpose of the instruction is to generally inform jurors of good conduct time and parole, but prohibit them from using the notions of these concepts in assessing the appropriate punishment. *Id.*

Appellant maintains that because he is not eligible for good-conduct time, the parole charge was unconstitutional as applied to him. *See* TEX. GOV'T CODE ANN. § 508.149(a)(5) (West Supp. 2014). In *Luquis,* the court of criminal appeals rejected the argument appellant makes. *Luquis,* 72 S.W.3d at 365. In *Luquis,* and in this case, the jury was instructed not to consider how good-conduct time or the parole law may be applied to the defendant. We assume the jury followed these instructions, and we will not find constitutional error unless we conclude that a reasonable jury probably was actually confused by this charge. *See id.* at 366-67.

Appellant did not object to the court's charge on punishment and thus bears the burden to show that any error resulted in egregious harm such that he did not receive a fair and impartial trial. *See Jiminez v. State,* 32 S.W.3d 233, 235 (Tex. Crim. App. 2000); *Atkinson v. State,* 107

—5—

S.W.3d 856, 859–60 (Tex. App.—Dallas 2003, no pet.). Appellant claims there is a reasonable probability the parole charge mislead the jury. He does not elaborate on how or why the jury was misled. As in *Luquis,* nothing in the record suggests the jurors discussed, considered, or tried to apply what they were told about good-conduct time and parole. *See id.* at 367. For example, the jury did not send out any notes on the subject and the prosecution did not mention parole or good-conduct time during closing arguments. Appellant has not demonstrated a reasonable likelihood that the jury was in fact misled by the instruction or that it assessed a higher punishment based on any misconstruction of the parole law charge. *See id.* at 368. Under these circumstances, the parole instruction did not violate appellant's right to due process, and we cannot conclude that appellant suffered egregious harm. *See id.; Atkinson,* 107 S.W.3d at 860. We overrule appellant's second issue.

## TRIAL COURT'S JURISDICTION

In his third issue, appellant argues Criminal District Court Number 7 lacked jurisdiction over his case because the case was not transferred to its docket. More particularly, he claims that the indictment was presented to Criminal District Court Number 3 and invested that court with jurisdiction over the case. Based on the absence of a transfer order from Criminal District Court Number 3 to Criminal District Court Number 7, appellant contends Criminal District Court Number 7 never acquired jurisdiction.

The failure to file a written transfer order is a procedural error, not a jurisdictional one. *Lamasurier v. State,* 91 S.W.3d 897, 899 (Tex. App.—Fort Worth 2002, pet. ref'd). This procedural error does not render the actions of the later court void, but merely makes them subject to a timely plea identifying the issue. *Garcia v. State,* 901 S.W.2d 731, 732-33 (Tex. Crim. App. 1995). As a result, a defendant who does not file a timely plea forfeits any complaint

about the lack of a written transfer order. *Mills v. State*, 742 S.W.2d 831, 835 (Tex. App.—Dallas 1987, no pet.).

In this case, appellant never filed a plea concerning the lack of a transfer order to the Criminal District Court Number 7 nor in any other way challenged the competence of that court over the indictment. In fact, he entered a plea of not guilty to the indictment in that court, and he was tried, convicted, and sentenced in that court. By failing to raise the issue in the district court and entering a plea and participating through counsel at trial, appellant forfeited his complaint about the lack of a transfer order. Accordingly, appellant's third issue as to the trial court's jurisdiction is without merit and is overruled.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140413F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

VINCENT PASCO, Appellant

No. 05-14-00413-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F-1259001-Y.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of October, 2015.